[No. H003119. Sixth Dist. Jan. 25, 1990.]

MELANIE GORMAN, a Minor, etc., Plaintiff and Respondent, v. MARGARET LEFTWICH, Defendant and Appellant.

**COUNSEL**

Edward A. Hinshaw and Michael A. Hurwitz for Defendant and Appellant.

Thomas Brandi, Bianco, Brandi & Jones, Victoria J. De Goff and DeGoff and Sherman for Plaintiff and Respondent.

**OPINION**

**COTTLE, J.**—In this medical malpractice action, defendant appeals from a judgment awarding plaintiff $1,652,070 in damages.[1] Defendant contends

---

[1] The jury awarded the plaintiff $4,122,070 for past and future economic and noneconomic damages. This figure was reduced by the setoff from prior settlements involving other defendants and by the statutory limit of an award for noneconomic damages. (Civ. Code, § 3333.2.)

the jurors committed prejudicial misconduct during deliberations by failing to vote on causation, by considering whether defendant had insurance coverage, and by obtaining outside information by watching a television program about medical malpractice. She claims the trial court abused its discretion by declining to give the special verdict instruction (BAJI No. 16.01) she requested and by denying as untimely her request pursuant to Code of Civil Procedure section 667.7 that compensation for plaintiff's future damages be paid periodically rather than in a lump sum payment at time of judgment.

I

For the purposes of appeal, the facts may be briefly summarized. Melanie Gorman was delivered by Caesarean section at 8:05 a.m. on July 25, 1979. She was ill at birth, registering a score of two out of ten on the APGAR test which evaluated the newborn's color, respiration, muscle tone, reflex irritability and heart rate. Tests performed two days earlier revealed that the fetus was somewhat oxygen deprived but not necessarily permanently damaged. The fact that Mrs. Gorman's membrane ruptured approximately an hour prior to delivery and the presence of thick meconium indicated the fetus was suffering some distress from oxygen deprivation. At 7:20 a.m., anticipating the baby would be sick at birth, the obstetrician called Mrs. Gorman's pediatrician, defendant Margaret Leftwich, informing her she was needed at the hospital immediately on an urgent basis. He said he was going to perform an emergency Caesarean section on Mrs. Gorman, that when Gorman's membrane had ruptured she had passed heavy meconium, and that there was fetal distress.

As soon as Melanie's head emerged, the anesthesiologist put a tube down her windpipe and suctioned the meconium out of her airway so it would not get into her lungs when she took her first breath. He also gave the baby oxygen with this tube. The anesthesiologist's primary duty was to care for Mrs. Gorman. After he sucked out the meconium and achieved some ventilation, it became defendant's responsibility to provide immediate care for the high risk infant, including resuscitating her and assisting her breathing in order to end the asphyxial episode and prevent the baby from suffering permanent damage. However, defendant "did nothing to end the evolving asphyxial episode that the child was experiencing."

It turned out defendant never had performed resuscitation on a newborn without supervision and never had ordered such a procedure. In 1979 the standard of care required a first year pediatric resident to be able to "intubate and bag" an ill newborn and required pediatricians familiar with these

resuscitation procedures to be in charge at delivery when a sick baby was expected.

Dr. Calvin Hobel, an expert on fetal distress during delivery and resuscitation of newborns, testified that Melanie's prebirth problems and respiratory problems at birth probably could have been corrected and that Melanie would have been normal if she bad been given prompt and proper resuscitation with pulmonary ventilation either by use of a mask or by insertion of a tube through the baby's upper airway.

Expert testimony was introduced which explained that, as a result of defendant's negligence, Melanie's depressed condition at birth worsened dramatically. Further testimony was introduced which explained that defendant's negligence contributed to Melanie's having cerebral palsy, a condition which has left her permanently incapacitated with no control over her bodily movements or functions; she cannot talk, must be fed through a tube, and requires around-the-clock nursing care.

## II

In the case at bar, defendant submitted five sworn juror declarations alleging various instances of jury misconduct. She contends, based on these declarations, she was denied a fair trial such that reversal is required. We disagree.

■ Defendant seeks to upset the general verdict on the basis of two juror declarations which state that no vote was taken on the issue of causation. Declarations which impugn the jury's mental processes or the jurors' reasons for assenting to the verdict or attempt to show "that the jury made no findings as to certain matters" are inadmissible under Evidence Code section 1150. (*De Vera* v. *Long Beach Pub. Transportation Co.* (1986) 180 Cal.App.3d 782, 796-797 [225 Cal.Rptr. 789]; see also *Sanchez-Corea* v. *Bank of America* (1985) 38 Cal.3d 892, 909-910 [215 Cal.Rptr. 679, 701 P.2d 826]; *People* v. *Hutchinson* (1969) 71 Cal.2d 342 [78 Cal.Rptr. 196, 455 P.2d 132].)

The policy in favor of ensuring the stability of verdicts and protecting jurors against harassment compels the rejection of the two declarations which allege the jurors did not vote on causation. (See *Cove, Inc.* v. *Mora* (1985) 172 Cal.App.3d 97, 99 [218 Cal.Rptr. 7]; *Tillery* v. *Richland* (1984) 158 Cal.App.3d 957, 972, 976 [205 Cal.Rptr. 191].) By contrast, it is when jurors affirmatively agree to disregard instruction that misconduct occurs. (See, e.g., *DiRosario* v. *Havens* (1987) 196 Cal.App.3d 1224, 1234-1235 [242

Cal.Rptr. 423]; *Ferreira* v. *Quik Stop Markets, Inc.* (1983) 141 Cal.App.3d 1023, 1033-1035 [190 Cal.Rptr. 778].) Defendant makes no such claim here.

■ Defendant next attempts to upset the verdict on the basis of a single declaration which alleges that during deliberations the jurors "discussed whether Dr. Leftwich had medical malpractice insurance" and that "[v]arious jurors said she most likely had medical malpractice insurance and the insurance company would pay the claim." The declaration contains no allegation that any of the jurors agreed to base their verdict upon this discussion regarding insurance. The other four juror declarations filed on behalf of defendant make no mention of insurance being discussed during deliberations.

If insurance had any impact upon the verdict, the single declaration would have so stated. "[T]o establish misconduct requiring reversal, juror declarations must establish '[a]n express agreement by the jurors to include such [consideration of insurance] in their verdict, or extensive discussion evidencing an implied agreement to that effect.' [Citations.]" (*Moore* v. *Preventive Medicine Medical Group, Inc.* (1986) 178 Cal.App.3d 728, 740 [223 Cal.Rptr. 859].) Here, as in *Moore*, the declaration does "not suggest an express agreement was reached and the discussion [it] relate[s] could hardly be characterized as extensive." (*Id.*, at pp. 740-741, fn. omitted.) Upon this record, we are satisfied that if insurance was mentioned at all, the discussion was not, in the words of Evidence Code section 1150, subdivision (a), "of such a character as is likely to have influenced the jury improperly."

■ Finally, defendant attempts to upset the verdict on the basis of four declarations which allege that two jurors discussed having watched a television program about medical malpractice during deliberations. One declarant stated that one of those two jurors said " 'we should give Melanie the whole eight million,' " commenting that she " 'saw a case on television where a child in Monterey with similar disabilities got sixteen or sixty million dollars.' " That declarant added that the second juror who watched the program commented to the jury, " 'I saw a malpractice program on television yesterday or Sunday and I should not have watched it.' "

Here, as in *Elsworth* v. *Beech Aircraft Corp.* (1984) 37 Cal.3d 540, 557 [208 Cal.Rptr. 874, 691 P.2d 630], "the jurors in question did not deliberately set out to discover information regarding the issues at the trial; they simply watched a . . . television program that happened to discuss the subject matter of the trial in a general way." (See also *Hasson* v. *Ford Motor Co.* (1982) 32 Cal.3d 388, 408-409 [185 Cal.Rptr. 654, 650 P.2d 1171].) But even if we were to agree with defendant that the jurors committed misconduct by watching the program and that a presumption of prejudice arose as

a result, the presumption is rebutted. In *Akers* v. *Kelley Co.* (1985) 173 Cal.App.3d 633 [219 Cal.Rptr. 513], a juror declaration disclosed that some jurors discussed an award in another case. The court held that reversal is not necessarily warranted on that basis alone, noting that the jury in that case deliberated for almost four full days, that during deliberations jurors often turn their attention to unrelated topics "such as politics, religion, the woeful status of a local baseball team, the weather, or even to a different case." (*Id.*, at p. 658.) Here, as in *Akers*, the declaration filed "does not say that the other case influenced the jury's ultimate decision." (*Ibid.*)

## III

Defendant contends the trial court abused its discretion by refusing her proposed special verdict form.

At the end of the trial, the court provided the parties the opportunity to place on the record any matter which arose during the course of the trial, including "those conversations we had going over the instructions and advising counsel as to which instructions the Court would give and wouldn't give." In response, defendant made a record of her earlier request for a "special verdict in line with BAJI 16.01," noting that the "Court indicated that it would prefer to have a general verdict rather than a special verdict," and asking "to have filed . . . a form of special verdict so that at least our record may be protected . . . ."

The requested special verdict form filed with the court asked the jury to answer in separate interrogatories whether defendant was negligent in the medical care and treatment of plaintiff, and if so, whether such negligence was a legal cause of injury to the plaintiff. If the jury found defendant's negligence a legal cause of plaintiff's injury, it was asked to determine the amount of damage to the plaintiff for past as well as future pain, suffering, inconvenience, physical impairment or disfigurement. It asked the jury to determine the amount of damage for loss of future earnings and for past medical hospital care and treatment legally resulting from defendant's negligence. Critical to resolution of the issues on appeal, the special verdict form submitted by defendant also contained the following questions for the jury:

"Question No. 6(a): What amount of damage, if any, do you find plaintiff will sustain for future medical, hospital, surgical, and rehabilitation care legally resulting from such negligence?

"Answer: $_____

"Question (6)(b) What amount do you find to be the present cash value of the amount stated in answer to Question 6(a)?

"Answer: $_____ " (See BAJI No. 16.01.) Instead, the verdict form actually given to the jury provided the opportunity to determine only the present cash value but not gross amount of future medical and related damages legally resulting from defendant's negligence.

Defendant claims her specific verdict form was necessary "in order to get a specific vote on each of the elements of a negligence cause of action, including causation, and also to preserve the right to periodic payments . . . ."

■ Defendant's suggestion that the jury did not vote on causation because it did not have the special verdict to guide it is without merit. The jury was instructed that "[a] Plaintiff who was injured as a legal result of some negligent conduct on the part of a Defendant is entitled to recover compensation for such injury from that Defendant. [¶] Thus, the Plaintiff is entitled to a verdict in this case if you find: [¶] 1. That the Defendant was negligent, and [¶] 2. That such negligence was a legal cause of injury to the Plaintiff." A general verdict on negligence "pronounce[s] generally upon all or any of the issues, either in favor of the plaintiff or defendant" (Code Civ. Proc., § 624), including causation. The verdict form used by the court further required the jury to vote on causation as part of rendering its verdict on damages. We find no abuse of discretion in the trial court's refusal to accept that portion of defendant's special verdict form dealing with causation.

However, the portion of the requested special verdict form quoted above which deals with calculation of future medical and related damages deserved more consideration.

The Supreme Court in *American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359, 377 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233], noted that in cases where the "elements of future damages" are in dispute "trial courts would be well advised to permit liberal use of the special verdict procedure so that the individual components of the jury's future damage award can be ascertained and the periodic payment schedule can be knowledgeably established [fn. omitted]." BAJIC No. 16.01 was drafted in response to the enactment of the Medical Injury Compensation Reform Act of 1975 (MICRA) and the above-cited language in *American Bank* to enable the jury to specify both the present value of damages for future losses and the total gross amount of such damages. Jury determinations on those issues could guide the trial court in determining a stream of

payments which would meet the plaintiff's needs according to the evidence and which would be equivalent in value to the gross amount of the jury's verdict on such damages. The Use Note to BAJI No. 16.01 (Form of Special Verdict-Medical Malpractice) makes it clear that the form of special verdict set forth in this BAJI instruction requested by defendant was "designed for use where there is either a single defendant or multiple defendants." (Use Note, BAJI, p. 260.)

We believe that, in cases such as this one, where there exists a possibility that future damages will exceed $50,000, the preferred practice is to permit the use of a special verdict form such as that requested by defendant. Because we find nothing in the record to suggest any reason why the trial court refused such a special verdict form, we conclude the court abused its discretion in depriving defendant of the opportunity to obtain the jury's verdict as to the gross amount of future medical, hospital, surgical and rehabilitation damages sustained by plaintiff.

Nevertheless, we are convinced this error in instruction does not require reversal for a new trial on the issue of damages. As discussed below, we believe that, where the jury returns only a present value verdict, a trial court can consider the trial testimony and, if necessary, supplement that evidence with postverdict testimony in order to determine the gross damages and in turn to fashion a schedule of periodic payments based thereon. We find nothing in such a procedure which denies either party its constitutional right to jury trial so long as the resulting judgment falls within the parameters of the verdict and the integrity of the fact finder's determination is maintained. (See *American Bank & Trust Co.* v. *Community Hospital*, *supra*, 36 Cal.3d 359, 374-378.)

IV

Defendant contends the trial court's refusal to order periodization of the jury's future damages award pursuant to Code of Civil Procedure section 667.7 requires a remand with directions to modify the judgment by adopting a schedule of periodic payments. We agree.

The jury returned a verdict finding that plaintiff, as a result of defendant's negligence, sustained future damages in the amount of $3,604,584 based on the present cash value of anticipated medical, hospital, surgical and rehabilitation care plus another $250,000 based on anticipated pain, suffering, inconvenience, physical impairment or disfigurement. Following delivery of the verdict, defendant moved to periodize the award under Code of Civil Procedure section 667.7. The trial court denied defendant's request for periodic payment of future damages on the ground that the request was not

timely made, that in this case, the "request for periodic payments should certainly be made by time of trial commencement so that jury can be properly instructed and Court can approach the problem if necessary to do so."

The pertinent portions of Code of Civil Procedure section 667.7[2] provide as follows: "(a) In any action for injury or damages against a provider of health care services, a superior court shall, at the request of either party, enter a judgment ordering that money damages or its equivalent for future damages of the judgment creditor be paid in whole or in part by periodic payments rather than by a lump-sum payment if the award equals or exceeds fifty thousand dollars ($50,000) in future damages. In entering a judgment ordering the payment of future damages by periodic payments, the court shall make a specific finding as to the dollar amount of periodic payments which will compensate the judgment creditor for such future damages. As a condition to authorizing periodic payments of future damages, the court shall require the judgment debtor who is not adequately insured to post security adequate to assure full payment of such damages awarded by the judgment. Upon termination of periodic payments of future damages, the court shall order the return of this security, or so much as remains, to the judgment debtor. [¶] (b)(1) The judgment ordering the payment of future damages by periodic payments shall specify the recipient or recipients of the payments, the dollar amount of the payments, the interval between payments, and the number of payments or the period of time over which payments shall be made. Such payments shall only be subject to modification in the event of the death of the judgment creditor. . . . [¶] (f) It is the intent of the Legislature in enacting this section to authorize the entry of judgments in malpractice actions against health care providers which provide for the payment of future damages through periodic payments rather than lump-sum payments. By authorizing periodic payment judgments, it is the further intent of the Legislature that the courts will utilize such judgments to provide compensation sufficient to meet the needs of an injured plaintiff and those persons who are dependent on the plaintiff for whatever period is necessary while eliminating the potential windfall from a lump-sum recovery which was intended to provide for the care of an injured plaintiff over an extended period who then dies shortly after the judgment is paid, leaving the balance of the judgment awarded to persons and purposes for which it was not intended. It is also the intent of the Legislature that all elements of the periodic payment program be specific with certainty in the judgment ordering such payments and that the judgment not be subject to modification at some future time which might alter the specifications of the original judgment."

---

[2] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

In *American Bank & Trust Co.* v. *Community Hospital, supra*, 36 Cal.3d 359, 364, the court held that section 667.7's requirement of periodic payment of "future damages" did not violate either the state or federal due process or equal protection clauses, since it was rationally related to a legitimate state interest (i.e., the reduction of medical malpractice insurance costs). Additionally, the provisions of section 667.7 have been held to be mandatory if raised in a timely fashion: "[T]he legislative history of section 667.7 leaves little doubt that here the Legislature intended to impose a mandatory duty on the trial court to enter a periodic payment judgment in cases falling within the four corners of the section." (*Fein* v. *Permanente Medical Group* (1985) 38 Cal.3d 137, 155 [211 Cal.Rptr. 368, 695 P.2d 665], app. dism., 474 U.S. 892 [88 L.Ed.2d 215, 106 S.Ct. 215].)

■ Here, although defendant waited until after the jury delivered its verdict to actually move for permission to proceed under section 667.7, she had indicated her intention to consider doing so as early as her first responsive pleading. Defendant pleaded section 667.7 in her answer by raising as her seventh affirmative defense that "in the event she is found to be negligent (which supposition is denied and merely stated for the purpose of this affirmative defense), this defendant may elect to have future damages, if any, in excess of the amount specified in Code of Civil Procedure § 667.7, paid in whole or in part as specified in Code of Civil Procedure § 667.7." This same affirmative defense was repeated in defendant's first amended answer. This was certainly timely in the sense that it provided plaintiff's counsel with more than ample time in which to plan evidence on the issue of damages accordingly. Plaintiffs, aware that defendant had been "accorded the right to the periodicization [*sic*] of future damages assessed against them," put on detailed economic testimony including gross and present value of future damages. ■ Defendant subsequently requested the appropriate special verdict form pursuant to BAJI No. 16.01 (7th ed. 1986), an instruction which the trial court refused. (See *Fein* v. *Permanente Medical Group, supra*, 38 Cal.3d 137, 155-157.)[3] The requested special verdict asked the jury to determine the gross value of plaintiff's loss for each item of future damages as well as the present value. Immediately after the judgment was entered, defendant requested a stay so appropriate "MICRA motions" could be made, including "periodicizing [*sic*] the payment schedule." Plaintiff's counsel acknowledged that the issue of periodic payments "would be the subject of a subsequent [i.e., postverdict] motion . . . ." We conclude

[3] Once a party elects to have any portion of the judgment paid periodically, the jury should be instructed to return a special verdict designating the gross amount of future damages and the present cash value of the award. The rendition of such a verdict will enable the trial court to structure a periodic payment schedule that is in keeping with the statutory objective of "provid[ing] compensation sufficient to meet the needs of an injured plaintiff . . . for whatever period is necessary . . . ." (Code Civ. Proc., § 667.7, subd. (f).)

that the trial court's refusal to give the requested special verdict and its subsequent refusal to order periodic payments on the grounds of untimeliness were error.

■ The question remaining is the proper disposition of this case. The jury did make a finding as to the amount of future damages. In so doing, the jury fulfilled its requirement "to designate the portion of its verdict that is intended to compensate the plaintiff for future damages" (*American Bank & Trust Co.* v. *Community Hospital, supra,* 36 Cal.3d at p. 376), identifying the amount of damages attributable to past and present damages and determining whether, based on the amount of future damages the periodic payment procedure will be applicable to the case. (*Ibid.*) While the court should have granted defendant's request for the special verdict to assist the trial court in structuring the periodic payment schedule, that error alone does not require reversal. "Once the jury has designated the amount of future damages—and has thus identified the amount of damages subject to periodic payment—we believe that the court's authority under section 667.7, subdivision (b)(1), to fashion the details of a periodic payment schedule does not infringe the constitutional right to jury trial." (*Ibid.*) While "it is apparent from the statute (1) that *the jury* remains the ultimate decision-maker of the plaintiff's 'total damages,' and (2) that *the court* is to fashion the specific details of the periodic payment award, designating the dollar amount of the payments, the interval between payments and the period of time over which the payments are to be made" (*id.,* at pp. 374-375, italics in original), even the dissent in *American Bank* conceded that "section 667.7 authorizes the court to convert the jury's discounted award into periodic payments." (*Id.,* at p. 390, Bird, C. J., dis.)

That portion of the judgment setting forth the amount of judgment in lump sum is reversed and remanded for a postverdict hearing in which the trial court shall determine the gross amount of future medical and related damages and in turn fashion a schedule of periodic payments based thereon. The judgment in all other respects is affirmed. Each party shall bear her own costs.

Agliano, P. J., and Capaccioli, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 25, 1990.