[No. D012892. Fourth Dist., Div. One. June 24, 1992.]

TODD SCHIERNBECK, Plaintiff and Respondent, v.
BRUCE T. HAIGHT, Defendant and Appellant.

**COUNSEL**

Lewis, D'Amato, Brisbois & Bisgaard, Douglas R. Reynolds, James E. Friedhofer and Philip A. Book for Defendant and Appellant.

Horvitz & Levy, Ellis J. Horvitz, David S. Ettinger and S. Thomas Todd as Amici Curiae on behalf of Defendant and Appellant.

John J. McAvoy for Plaintiff and Respondent.

Ian Herzog, Evan Marshall, Leonard Sachs, Douglas DeVires, Bruce Broil-lett, Leonard Esquina, Ronald Rouda, Robert Steinberg, Harvey R. Levine and Roland Wrinkle as Amici Curiae on behalf of Plaintiff and Respondent.

## Opinion

**WIENER, Acting P. J.**—This case concerns the implementation of Code of Civil Procedure section 667.7,[1] part of the Medical Injury Compensation Reform Act of 1975 (MICRA), which provides for periodic payments of future damages in medical malpractice cases.[2] The question presented is whether the court correctly awarded interest on periodic payments from the date of the verdict. As we shall explain, we conclude that on the facts of this case the court erred in doing so. We therefore strike the award of interest and as modified affirm the judgment.

### Procedural Background

Plaintiff Todd Schiernbeck's action for malpractice against the defendant, Bruce T. Haight, M.D., resulted in the jury awarding him $433,000. $178,000 of the award represented future economic damages; $100,000 represented future noneconomic damages.[3] In posttrial proceedings, Haight successfully moved under section 667.7 to have the future damages payable

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

Section 667.7 provides in pertinent part:

"(a) In any action for injury or damages against a provider of health care services, a superior court shall, at the request of either party, enter a judgment ordering that money damages or its equivalent for future damages of the judgment creditor be paid in whole or in part by periodic payments rather than by a lump-sum payment if the award equals or exceeds fifty thousand dollars ($50,000) in future damages. In entering a judgment ordering the payment of future damages by periodic payments, the court shall make a specific finding as to the dollar amount of periodic payments which will compensate the judgment creditor for such future damages. . . .

"(b)(1) The judgment ordering the payment of future damages by periodic payments shall specify the recipient or recipients of the payments, the dollar amount of the payments, the interval between payments, and the number of payments or the period of time over which payments shall be made. Such payments shall only be subject to modification in the event of the death of the judgment creditor."

[2] The importance of the issue presented in this case has resulted in the filing of an amicus curiae brief by the California Trial Lawyer's Association in support of Schiernbeck. Several health care organizations have also filed an amicus curiae brief in support of Haight. They include the California Medical Association, California Dental Association and California Association of Hospitals and Health Systems.

[3] The jury was instructed on the effect of MICRA's Civil Code section 3333.2, which places a $250,000 cap on noneconomic damages. Here, the jury awarded the maximum of $250,000, with $150,000 representing past noneconomic damages and $100,000 future noneconomic damages.

in installments. The court ordered that a lump sum payment of $50,000, taken equally from both future economic and noneconomic damages, was to be paid to Schiernbeck within 30 days, with the balance of future damages bearing interest at 10 percent annually to be paid in installments. Specifically, the balance of future economic damages of $153,000 with interest was to be paid in equal monthly installments over 16 years; $75,000 representing the balance of noneconomic damages plus interest to be paid in equal annual installments over 10 years.

DISCUSSION

I.

*Interest on the Principal Balance Payable in Installments Under Section 667.7 Is Not Constitutionally Mandated*

Schiernbeck initially contends that we must affirm the judgment because postjudgment interest on periodic payments is constitutionally mandated. To support his argument he directs us to article XV, section 1 of the California Constitution: "[t]he rate of interest upon a judgment rendered in any court of this state shall be set by the Legislature at not more than 10 percent per annum. . . . [¶] In the absence of the setting of such rate by the Legislature, the rate of interest on any judgment rendered in any court of the state shall be 7 percent per annum. [¶] The provisions of this section shall supersede all provisions of this Constitution and laws enacted thereunder in conflict therewith."

Even if we were to assume article XV, section 1 establishes a constitutional entitlement to postjudgment interest,[4] this provision does not apply to the issue presented here where we are dealing with the question of *when* interest should accrue and not whether it accrues. The California Constitution does not say interest must accrue before the judgment or any part of it is due. Where a party will suffer no loss until a future date, constitutional considerations do not require interest to accrue on such sum *before* the damages are sustained, even though the party may have a judgment to

---

[4]There appears to be a conflict in authority as to whether this provision establishes a constitutional entitlement to postjudgment interest or whether it merely sets the maximum rate of interest on a judgment. (Compare *Harland* v. *State of California* (1979) 99 Cal.App.3d 839, 842-844 [160 Cal.Rptr. 613] [holding that Cal. Const. art. XV, § 1 *mandates* postjudgment interest and that public entities are not excluded from the mandate] with *Morris* v. *Department of Real Estate* (1988) 203 Cal.App.3d 1109, 1112 [250 Cal.Rptr. 432] [reading Cal. Const. art. XV, § 1 as setting the maximum rate of interest on a judgment and not providing a constitutional entitlement to postjudgment interest]; see also *San Francisco Unified School Dist.* v. *San Francisco Classroom Teachers Assn.* (1990) 222 Cal.App.3d 146, 151 [272 Cal.Rptr. 38] [noting that *Morris*'s holding "is directly contrary to that arrived at after lengthy analysis in *Harland* . . . ."].)

enforce the future loss when and if the installments due under the judgment are not timely paid. We therefore hold the interest award here cannot be supported on the basis of article XV, section 1 of our state Constitution.

## II.

### *The Award of Future Economic Damages Was Not Reduced to Present Value*

Schiernbeck says that even if interest is not authorized in all situations, at the very least it is proper where the jury verdict or damages is stated in present value terms. Although there may be considerable appeal to this argument, there is no need to address it because, as we shall explain, the jury verdict represented future economic damages without the reduction of such damages to present value.

■ Schiernbeck seems to implicitly acknowledge that the unpaid balance reflecting *future* economic loss which has not been reduced to present cash value, should not bear interest. We agree. The purpose of section 667.7 payments is to provide compensation for losses that are to occur in the future. (See *American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359, 369 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233].) A plaintiff suffers no detriment if the future damages portion of the award is not paid when judgment is entered because the injury for which the payment is intended to compensate has not yet occurred. By definition, therefore, a periodic payment due on some future date is not unpaid until that date. "Interest is only awardable to compensate for a delay in payment and compensation for future needs involves no such delay." (*Schneider* v. *Kaiser Foundation Hospitals* (1989) 215 Cal.App.3d 1311, 1320, fn. 7 [264 Cal.Rptr. 227].) Accordingly, interest on periodic payments for *future* losses which have not been reduced to present cash value is improper.

■ To support the court's finding that the future damages award here reflects present cash value, Schiernbeck argues: (1) the evidentiary record supports such interpretation; (2) ambiguities in the verdict should be construed in his favor; and (3) Haight waived his right to challenge the court's findings.

### A.

Schiernbeck first says that based upon the court's evaluation of the facts of the case, the testimony of the witnesses, [and] the severity of [Schiernbeck's] injury, the trial court concluded the verdict unambiguously reflected an award of future damages in present value terms. He directs us to the

court's statement: "the verdict appears . . . to be more in line with present day value than an inflated value over a period of years. . . . [¶] If I were to rule to the contrary, I think that I would find that the amount that was returned by the jury would be substantially under what a reasonable amount could have been found and would, dangerously close to the situation in which there would be an additur or a new trial ordered on behalf of the plaintiff because of the severe injury that he has suffered and the circumstances under which it was suffered."

Although the court's independent evaluation of the evidence may be correct, there is no legal basis on which its decision can rest. We would, of course, defer to the court's conclusion had the court made its ruling in the context of Schiernbeck's motion for new trial or in a motion challenging the adequacy of damages. The issue here, however, is not presented to us in that manner. Rather, we have to decide whether there is any basis in the record to support the court's interpretation of the verdict.

Schiernbeck produced three witnesses to support his future economic damage claim. Justin Fair, a vocational rehabilitation counselor, posed two methods to measure plaintiff's lost earning capacity: (1) $5 per hour over a 33.3-year worklife expectancy; or (2) $100,000 which would pay for a college education and lost earnings while in college. Second, Dr. John Beale testified Schiernbeck will be required to spend $15,000 to $20,000 for future eye surgery and $250 to $500 per year on special care for his eye. Schiernbeck's life expectancy is 46.9 years. Third, Schiernbeck's employer testified that but for plaintiff's injuries he would be earning about $40,000 a year, instead of approximately $27,000. In addition, Schiernbeck's counsel used a per diem argument for damages for future noneconomic losses: $10 per day times 365 days per year for "about 50 years" equals $150,000.

None of the witnesses testifying about Schiernbeck's future losses indicated they were calculating Schiernbeck's damages in present value terms. Absent such evidence, there is no basis for the court's conclusion.

### B.

Schiernbeck argues even if the verdict were ambiguous, the court correctly interpreted it in his favor based upon the record in this case. (See (*Woodcock* v. *Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 452, 456 [72 Cal.Rptr. 217, 445 P.2d 881] [an ambiguous verdict will be upheld where it is possible to give it a correct interpretation based upon the pleadings, evidence and instructions in the case].) Because there were no instructions or evidence and virtually no argument on the present value concept, we conclude such inference is unwarranted.

In instructing the jury on future *noneconomic* losses, the trial court said the jury could award "reasonable compensation for future pain and suffering." (See BAJI No. 14.13.) The court, however, did not mention present valuation. With respect to future *economic* losses, the court instructed the jury to award the "present cash value" of future medical expenses and of lost earning capacity. Significantly, based on the parties' agreement, the court did not instruct the jury on BAJI No. 14.70, explaining the meaning of "present cash value."[5] Haight's counsel withdrew such proposed instruction, explaining, "I'm requesting that no . . . reduction of present value instruction be given, since we have asked the court to take it on itself, and in the event of a future damage verdict in excess of $50,000, we're going to be asked for periodic payments; therefore, I don't think it would be proper to instruct the jury on reduction of present value." Schiernbeck's counsel responded he was *"requesting that [the present value instruction] be withdrawn as well . . . ."*

There was also no *evidence* on how to determine the present value of future loss. We reject Schiernbeck's arguments to the contrary. He directs us to the cross-examination testimony of Haight's economist Michael Willoughby, who said inflation for 1988 was 4 percent and agreed that an employer who fails to adjust for inflation reduces his employees' wages in real terms. However, while the rate of inflation may be relevant in the present value calculation (see Flahavan et al., Cal. Practice Guide: Personal Injury (The Rutter Group 1990) ¶ 3:99 at p. 3-52), it by itself cannot convert a gross value amount into a present value, defined as the amount of money which, together with investment return at the highest yield rate consistent with reasonable security, would defray the economic losses plaintiff is expected to sustain in the future. (See BAJI No. 14.70.) Neither party introduced any evidence of compounding or discounting factors, including how to calculate an appropriate rate of return throughout the relevant years. Under such circumstances, the "jury would have been put to sheer speculation in determining . . . 'the present sum of money which . . . will pay to

---

[5]BAJI No. 14.70 states:

"Any [award for] [finding of] future pecuniary loss must be only for its present cash value.

"Present cash value is the present sum of money which, together with the investment return thereon when invested so as to yield the highest rate of return consistent with reasonable security, will pay the equivalent of lost future benefits at the times, in the amounts, and for the period that you find such future benefits would have been received.

"The present cash value will of course, be less than the amount you find to be the loss of such future benefits.

"[In the event you have occasion to determine the present cash value of future constant annual pecuniary losses, there is handed to you a table the correctness of which the court takes judicial notice and from which you can determine the present cash value of such losses by following the instructions printed thereon.]"

the plaintiff . . . the equivalent of his [future economic] loss . . .' " (*Wilson v. Gilbert* (1972) 25 Cal.App.3d 607, 614 [102 Cal.Rptr. 31].)[6]

Schiernbeck's reliance on *Howard* v. *Global Marine, Inc.* (1972) 28 Cal.App.3d 809 [105 Cal.Rptr. 50] for a contrary rule is misplaced. In *Howard*, the jury *was* instructed on BAJI No. 14.70 and specifically told to determine the damage award in present value terms. The trial court also gave the jury the option, if it found such calculation too confusing, to agree on the determinables (e.g. the amount of earning capacity loss per year, the number of years, etc.) following which the court and parties would recalculate the damage award in present value terms. Distinguishing *Wilson*, *Howard* held the use of a present value table in such a situation is not "indispensable" to a proper present damage value award for loss of future earning capacity. Such holding is inapplicable to the circumstances here where the jury was not provided evidence *or* instructed on the present value calculation, or given the option to determine appropriate figures and for the court to calculate the present value using those figures.

In addition, except for a brief ambiguous reference by Schiernbeck's counsel, the present value concept was not presented in either counsel's closing arguments. Immediately after discussing testimony regarding Schiernbeck's future lost earning capacity, Schiernbeck's counsel said:

"Oh, wait a second. How about present value of this or you can put in the bank or do this and that? Well, we all know what we bought our house for, or what we bought our last car for. Go out and buy another house or car. Is it keeping up? Is your bank interest keeping up with inflation? If you've got a real good bank account, maybe. If you're a clever investor, maybe. Has Todd got any credentials in investing? No." Clearly the foregoing statement is insufficient to inform the jury how to convert a gross value into a present value amount.

## C.

 Schiernbeck contends Haight waived his right to complain about the trial court's interpretation of the verdict in present value terms on the grounds that Haight's counsel: (1) drafted the special verdict form; (2) failed to affirmatively submit present value instructions or evidence before the jury; and (3) failed to seek clarification before the jury was dismissed.

---

[6]Schiernbeck's counsel conceded as much in postverdict papers submitted in opposition to Haight's request for periodic payments, stating: " 'Present day value' versus 'future gross value' and such concepts are alien to the general knowledge of the jury population and, as such, in the absence of instruction by a qualified expert . . . such knowledge should not be imposed on the jury . . . ."

Haight's contention that any ambiguity in the jury's special verdict should be construed against the drafter of the form is meritless. Schiernbeck relies upon the contract rule that ambiguities are to be resolved against the drafting party, where "the party of superior bargaining power not only prescribes the words of the instrument but the party who subscribes to it lacks the economic strength to change such language." (*Neal* v. *State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690, 695 [10 Cal.Rptr. 781].) This rule is inapplicable to the preparation of a special verdict form where, as here, the form was prepared under the direct supervision of the court, each party had equal power to object to any portion of the form, and the court specifically approved the form before it submitted it to the jury.

We also reject Schiernbeck's argument that "[b]y seeking the benefit of Code of Civil Procedure Section 667.7, Haight made it his responsibility . . . to offer a jury instruction on present value and expert witness testimony and other evidence in its support." A party is entitled to periodic payments if the future damage award is over $50,000. (§ 667.7.) When a party so requests, the court must fashion the periodic payments based on the *gross* amount of future damages. (*Gorman* v. *Leftwich* (1990) 218 Cal.App.3d 141, 153 [266 Cal.Rptr. 671]; Flahavan et al., Cal. Practice Guide: Personal Injury, *supra*, ¶ 3.104 at pp. 3-55-3-56.)[7] Thus, where as here, the evidence will probably result in a verdict of at least $50,000 in future damages, the defendant has no obligation to present evidence, request instructions, or submit a special verdict form regarding present value. Contrary to Schiernbeck's assertions, the verdict form provided all the information necessary for the court to fashion the periodic payment schedule.

*Hurlbut* v. *Sonora Community Hospital* (1989) 207 Cal.App.3d 388 [254 Cal.Rptr. 840], relied upon by Schiernbeck, is inapposite. In *Hurlbut*, the jury awarded plaintiff damages for lost earnings, a portion of which was attributable to the period of time by which the plaintiff's life expectancy was diminished. Such "lost years" damages, however, are not subject to periodic payments. (See *Fein* v. *Permanente Medical Group* (1985) 38 Cal.3d 137, 156-157 [211 Cal.Rptr. 368, 695 P.2d 665].) The defendant in *Hurlbut* nonetheless failed to request special findings to make clear which portion of the award w; s based upon plaintiff's premature death as opposed to plaintiff's lost earnings stemming from her disability. Under such circumstances,

[7]In *Gorman*, a medical malpractice action, the trial court told the jury to determine *only* present value amounts, refusing defendant's request to give the jury a special verdict form asking the jury to calculate damages in present *and* gross value amounts pursuant to BAJI No. 16.01. On appeal, the defendant contended the trial court's refusal to give her requested special verdict form improperly interfered with her right to periodic payments. The court agreed, holding the trial court's refusal to allow the jury to determine the gross value of future damages constituted an abuse of discretion.

the court held the entire lost earnings award should be paid in lump sum since the defendant failed to propose sufficient special findings. (*Hurlbut* at p. 407; see *American Bank & Trust Co.* v. *Community Hospital, supra,* 36 Cal.3d 359, 377.)

Here, where there was no allegation of a shortened life span and the special verdict form provided for each of the relevant components of the jury's future damage award, Haight did not waive his right to request periodic payments or to challenge the court's award of interest on those payments.

There is also no merit to Schiernbeck's contention that Haight's failure to seek clarification before the jury was dismissed constitutes a waiver. A party adversely affected by an ambiguous verdict waives the right to complain about the ambiguity, *only* where the failure to object is "the result of a desire to reap a 'technical advantage' or engage in a 'litigious strategy.'" (*Woodcock* v. *Fontana Scaffolding & Equip. Co., supra,* 69 Cal.2d at p. 456 fn. 2.) There was nothing in the record supporting Schiernbeck's claim that Haight's failure to object before the jury was dismissed was the result of Haight's "secret agenda" or his desire to "set a trap for SCHIERNBECK." To the contrary, given Haight's stated intention during trial to seek periodic payments (see, *ante,* at p. 876), the fact the jury awarded in excess of $50,000 in future damages, the lack of evidence on the subject of present value, and Schiernbeck's specific agreement *not* to give the present value instruction, there is no showing Haight could have known the verdict was ambiguous at the time it was rendered. It was only after Schiernbeck began arguing that the verdict was stated in present value terms did the issue present itself.

Based on the foregoing review of the record we conclude the court erred in awarding interest on the basis that the verdict reflected future damages reduced to present value.

## III.

### *Interest on Future Noneconomic Damages*

 The more difficult issue is whether a court has the authority to award interest on the unpaid balance of a periodicized judgment involving future *noneconomic* damages. Schiernbeck and amicus curiae California Trial Lawyers Association argue interest should be payable in those cases where the jury awards future noneconomic damages statutorily capped at $250,000. (Civ. Code, § 3333.2.) They explain that where the jury is informed of the

MICRA limitation and accordingly limits the plaintiff's damages to $250,000, a plaintiff will suffer a loss of use resulting from misallocation of the future payments to a time after which the future damages are actually incurred.

We agree that the rationale for denying interest on periodic payments on future *economic* awards (see, *ante*, at p. 874) does not apply in such a situation. Assume a seriously injured plaintiff in a coma awakens shortly before trial and thereafter suffers excruciating pain as a result of his injuries. In this hypothetical case a jury might award only $5,000 for past noneconomic damages, but $3 million for future noneconomic damages. Assume further that pursuant to instructions, the jury reduces the future noneconomic damage award to $245,000. Thereafter the court orders the $245,000 to be paid in equal annual installments over 10 years, the anticipated life span of the plaintiff. This hypothetical clearly shows that the $24,500 paid annually hardly compensates the plaintiff for his suffering determined by the jury to be $300,000 annually. In such a case interest does not overcompensate the plaintiff because it does not represent payment for damages to be suffered in the future. It must be remembered that the $250,000 limitation established by MICRA represents the Legislature's attempt to cap noneconomic damages and does not reflect a legislative determination that a person injured as a result of medical malpractice does not suffer such damages. It is one thing to preclude interest on damages which will not be sustained until some future point in time. It is quite another to deny compensation to an injured plaintiff for damages for physical and emotional suffering already incurred.[8]

There are, of course, ways in which this potential unfairness can be reduced or possibly eliminated. One approach, and one which we recommend for trials of medical malpractice cases, is that the jury not be told of the $250,000 ceiling for noneconomic damages. In cases where this is done

[8]The Commissioners on Uniform State Laws recognized this problem by expressly providing that the Uniform Periodic Payment of Judgments Act does not apply to future noneconomic damages. The comment to section 2 of the uniform act explains:

"Although most states consider noneconomic loss to be sufficiently quantifiable to permit a jury to assign a lump-sum dollar amount to such loss, it does not appear to be realistic to carry the concept of quantification to the point of yearly (or monthly) payments for noneconomic loss, adjusted for inflation . . . There is no universal measure of the value of pain, embarrassment over facial scars, or the crippling loss of limbs or bodily functions. Yet, juries do determine the monetary value of these injuries. Asking a jury to annualize a value for these types of noneconomic losses and fix an inflation factor to each future year seems to compound the unreality of the task. . . . For these reasons and because practicality requires that funds be made available for the payment of attorney's fees and expenses, it was decided that future damages for noneconomic loss should not be subject to periodic payments under the Act." (14 West's U. Laws Ann. (1990 ed.) U. Periodic Payment of Judgments Act (1992 pocket supp.) p. 12.)

California's enactment of section 667.7, subdivisions (a) and (e)(1) providing for periodic payments of future noneconomic damages reflects its rejection of the concerns expressed in the preceding comment.

and the jury verdict is substantially greater than the statutory limitation, the trial court will then be able to tailor the amount and timing of the periodic payments so that the compensation plaintiff will be receiving periodically will more accurately mirror plaintiff's pain and suffering. In such cases the trial court may decide that the only fair way to deal with the jury's finding that the plaintiff will suffer noneconomic damages of at least $250,000 during the first year following the trial will be to periodicize the maximum amount over the relatively brief period of time the plaintiff actually suffers those damages. A trial court should make every effort to select a schedule of payments which will prevent a plaintiff from being denied compensation for noneconomic damages already incurred.[9]

The problem identified by Schiernbeck and the amicus curiae California Trial Lawyers Association, however, does not require an award of interest in this case. Here, the order requiring that future noneconomic damages be paid periodically did not result in an unfair delay of payment to Schiernbeck. Our decision on this point is based on the fact that the order required the noneconomic damages to be paid over a shorter period, 10 years, than the 50 years Schiernbeck's counsel told the jury that his client would be suffering such damages.

The jury was instructed it should limit the award of noneconomic damages to $250,000 rendering a total award in that amount with $100,000 representing future noneconomic damages. In this setting we do not know what amount in excess of that sum, if any, the jury would have awarded had it not been so constrained. Although we cannot definitively determine this sum we nonetheless are guided by the evidence Schiernbeck presented and his counsel's argument to the jury.

Schiernbeck described his discomfort with his droopy eyelid and the anxiety associated with his loss of vision. Later, in arguing to the jury as to how much the jury should award for general damages Schiernbeck's counsel said, "[s]omething has to be done in a meaningful way for the rest of his life, because he's stuck with this condition the rest of his life. Acapulco isn't going to make this kid feel better. A dollar a day? $10 a day? Yes, that isn't much. Actually, it is, though, when you take $10 a day, 365 days a year. That's $3600, by about 50 years. Only $10 a day. That's $150,000."

In light of this argument it is reasonable that the jury would have decided that Schiernbeck would suffer future loss with pain and suffering at an annual rate of approximately $3,600. We say this on the assumption it is unlikely the jury would have exceeded the amount requested by Schiernbeck's counsel. The periodic payments of future noneconomic loss were

---

[9]Because of the difficulties associated with relating noneconomic damages to future pain and suffering the court should use the award of noneconomic damages as the source for the initial lump-sum payment to the plaintiff.

ordered in annual installments of $7,500. Thus under this schedule Schiernbeck will recoup his loss for pain and suffering over a shorter period and in greater annual amounts than was decided by the jury, i.e. $7,500 annually compared to $3,600 annually. Accordingly, no unfairness resulted here since each installment will fully compensate Schiernbeck for his future damages, receiving payment of part of those damages even before he will actually suffer such damages. In such circumstances, an award of interest is improper.

## IV.

### *It Is Unnecessary to Remand for Further Proceedings*

Our conclusion the court erred in awarding interest places us in a quandary. The trial court specifically stated it was relying on its award of interest in electing not to grant a new trial on its own motion subject to an additur. The court's primary concern was that the jury awarded damages based on the value of present dollars without adjusting upward because of inflation. Amici curiae on behalf of both parties say we should address this problem by remanding the case to permit Schiernbeck to introduce evidence of inflation at a new trial or at a new periodic payment hearing. This view is not shared and is strongly opposed by Haight's counsel. While a new trial may be beneficial to Schiernbeck, we conclude no prejudicial error tainted this trial and consequently further proceedings cannot be justified. Schiernbeck had the opportunity to present evidence of inflation in his trial but chose not to do so. To remand for further proceedings after a fair trial not only places an unfair economic burden on Haight but improperly burdens the justice system. Because both parties have participated in a full and fair trial, we affirm the judgment as modified.

### DISPOSITION

The judgment is modified by striking the award of interest on future damages. As modified the judgment is affirmed. The parties to bear their respective costs for this appeal.

Benke, J., and Nares, J., concurred.