168 P.3d 512 (2007)
Kody GARHART, a minor, by and through his parents and next friends, Jennifer TINSMAN and Kip Garhart, Plaintiff-Appellee,
v.
COLUMBIA/HEALTHONE, L.L.C., d/b/a North Suburban Medical Center, Defendant-Appellant.
No. 05CA1725.
Colorado Court of Appeals, Division I.
July 26, 2007.
*514 Irwin & Boesen, P.C., Kirk D. Tresemer, Denver, Colorado; Beth L. Krulewitch, P.C., Beth L. Krulewitch, Denver, Colorado, for Plaintiff-Appellee.
Dickinson, Prud'Homme, Adams & Ingram, LLP, Gilbert A. Dickinson, Molly P. Tighe, Denver, Colorado; Davis Graham & Stubbs, LLP, Andrew M. Low, Jonathan W. Rauchway, Catherine L. Guzelian, Denver, Colorado, for Defendant-Appellant.
Opinion by Judge MÁRQUEZ.
In this medical malpractice action, defendant, Columbia/HealthONE, L.L.C., doing business as North Suburban Medical Center (Hospital), appeals the judgment requiring it to purchase annuity contracts funded with the full amount of the jury's award. We affirm.
The facts of this case were set forth in detail in Garhart ex rel. Tinsman v. Columbia/HealthONE, L.L.C., 95 P.3d 571 (Colo. 2004), and will not be repeated extensively. Plaintiff, Kody Garhart, suffers severe physical and mental complications incurred during his birth at Hospital, and his mother suffered severe medical complications. Plaintiff and his mother sued the doctors involved and Hospital. The doctors settled and were dismissed, and the case went to trial against Hospital only.
At trial, plaintiff and Hospital presented expert witnesses who gave conflicting testimony as to the appropriate rate for determining the present value of future damages.
The jury found Hospital to be negligent and sixty percent responsible for Kody's injuries and found his life expectancy to be forty-one years. The jury entered a verdict for damages in favor of Kody from the time of birth to the time of trial as follows:

 Economic losses for essential home care
 services: $ 50,000
 Noneconomic losses, including pain and
 suffering, inconvenience, emotional
 stress, and impairment of quality of life: $1,000,000

The jury also entered a verdict for the present value of Kody's future damages (those categories of damages from the time of trial through his life expectancy) as follows:

 Medical and other health care: $4,800,000
 Lost earnings and earning capacity: $1,500,000
 Other economic losses: $ 545,000
 Noneconomic losses, including pain and
 suffering, inconvenience, emotional
 stress, and impairment of quality of life: $4,000,000
 Noneconomic losses for physical impairment
 and disfigurement: $ 500,000

The total verdict entered in Kody's favor was $12,395,000.
The trial court reduced the judgment in accordance with the jury's apportionment of fault and pursuant to the cap on noneconomic damages of the Health Care Availability Act, § 13-64-101, et seq., C.R.S.2006 (HCAA). The mother accepted the jury's award pertaining to her injuries and did not participate in further litigation.
On appeal, the supreme court affirmed as to liability, and held that the HCAA was not unconstitutional and that the trial court had misapplied the HCAA caps. The court remanded with instructions for the trial court to recalculate the damages and enter the judgment for future damages in the form of periodic payments. The final amount for the present value of future damages against Hospital, affirmed by the supreme court, was $4,380,000 plus interest. Garhart, supra.
On remand, the trial court applied the HCAA caps, reduced Hospital's portion of damages based on the jury's finding of 60% fault, and recalculated the damages based on the supreme court's decision. By applying the reduction for caps, the noneconomic damages jury award was reduced from $5,000,000 to $250,000, and Hospital was responsible for $150,000 of that amount. The nonexempt economic loss cap was applied to present home care services, future other economic *515 losses, and future physical impairment and disfigurement damages, thus reducing the jury award from $1,095,000 to $750,000, of which Hospital was responsible to pay $450,000. The total judgment entered by the trial court was $4,380,000 plus accrued interest. The parties agreed that the accrued interest, past economic losses, future physical impairment and disfigurement damages, and other economic losses be paid in a lump sum. The trial court ordered that two annuity contracts be purchased, the first for Kody's future lost earnings and the second for all other future damages.
Before the trial court entered its findings and judgment, plaintiff and Hospital presented evidence and argument and submitted proposed orders and briefs supporting their proposals on how to fund future damages. Plaintiff and Hospital each proposed purchasing two annuities, with costs and benefits as follows:
Future Medical and Other Expenses:
Plaintiff's Proposal: life with certain annuity, $10,056.82 for life, payable monthly, guaranteed for thirteen years and three months, beginning on June 1, 2005, increasing at a rate of 4.00% compounded annually, with the last guaranteed payment on August 1, 2018

 Cost: $ 2,053,210
 Guaranteed Benefit: $ 2,056,793
 Expected Benefit: $45,842,454

Hospital's Proposal: temporary life annuity, $6,156.38 paid if living, payable monthly, beginning on June 1, 2005 for a maximum of 36 years and 4 months, increasing at a rate of 4% compounded annually

 Cost: $1,044,190
 Guaranteed Benefit: $ 0
 Expected Benefit: $5,833,758

Future Economic Loss (Lost Wages):
Plaintiff's Proposal: life with certain annuity, $4,311.04 for life, payable monthly, guaranteed for 27 years, beginning on September 4, 2014, with the last guaranteed payment on August 4, 2041

 Cost: $ 534,181
 Guaranteed Benefit: $1,396,777
 Expected Benefit: $3,203,103

Hospital's Proposal: temporary life annuity, $3,659.25 paid if living, payable monthly, beginning on September 4, 2014 for a maximum of 27 years, increasing at a rate of 3% compounded annually

 Cost: $ 170,806
 Guaranteed Benefit: $ 0
 Expected Benefit: $1,787,601

Hospital argued that its proposal met the legislative intent in passing the HCAA, to curb the costs of malpractice cases and better reflect the award made by the jury. Hospital asserted that the annuity company estimated Kody's life expectancy as being shorter than the jury's estimate and thus would pass the savings of the cost of an annuity to Hospital. According to Hospital, the annuity company also would assume the risk that Kody will live longer than the estimated life expectancy, but would agree to pay the annuity for life.
The trial court nonetheless accepted plaintiff's proposal for funding and scheduling of payments. The cost of funding the annuities was based on the present value determined by the jury in its verdict.
In rejecting Hospital's proposal, the court noted that a trial court has discretion in determining the funding and distribution of periodic payments. The court determined that, in making its proposal, the Hospital used an expert whose "methodology was highly speculative, consistently tended to unreasonably minimize the jury's factual determination of the damages, and significantly reduced the present value of the Plaintiff's recovery." Noting that pursuant to CRE 606(b) it is prohibited from inquiring into the course of the jury's deliberations, the trial court "decline[d] to speculate as to the jury's reasoning in reaching its determination of damages" and stated it found
the arguments and computations of the Plaintiff to be more reliable, less speculative and better calculated to meet the goals of the HCAA . . . [and to] meet[] the needs of the Plaintiff while at the same time protecting the Defendant from exposure to unnecessary damages caused by the Plaintiff's early demise.

*516 I. Hospital's Annuity Proposal
Hospital contends the trial court should have (1) used its proposed order for the annuity and periodic payments, and (2) determined the value of future damages as proposed by Hospital's expert witness to decide which proposal was better. We perceive no error.

A. HCAA
In resolving these contentions, we first reviewed the pertinent parts of the HCAA in effect at the time of trial and judgment.
Section 13-64-204(1), C.R.S.2006, provides that the jury "shall make separate findings for each claimant specifying the amount of . . . (b) [a]ny future damages and the period of time over which they will be paid." The jury is then required to "determine the present value of future damages." Section 13-64-205(1)(d), C.R.S.2006. In addition, the trial court is to apply setoffs, credits, and comparative fault to determine the final obligation. Section 13-64-205(1)(a), C.R.S.2006. In the case of a minor, such as plaintiff, the trial court must then enter judgment for the periodic payment of future damages. Section 13-64-205(1)(d), (f), C.R.S.2006; see Garhart, supra.
The HCAA allows the trial court to use its discretion in entering its judgment for periodic payments. Section 13-64-207(1), (1)(f), C.R.S.2006 (judgment shall provide for payments to be funded in one of several forms approved by the court, including an annuity contract or "[a]ny other satisfactory form of funding").

B. Standard of Review
The HCAA places the decision as to the form and funding of periodic payments within the discretion of the trial court.
The supreme court in a case involving the HCAA has recognized that allowing the trial court to determine the form of funding and distribution of periodic payments is appropriate:
We recognize that the manner in which a trial court chooses to distribute the plaintiff's periodic payments can have an enormous effect on the plaintiff's judgment; and thus, the trial court should make an informed and judicious decision regarding this issue. However, we do not believe that it is arbitrary or unreasonable to allow a trial court to make such a determination. In fact, given the plaintiff's incapacity, it was rational for the general assembly to conclude that the trial court was in the best position to determine what form of funding and distribution would be best under the circumstances.
HealthONE v. Rodriguez, 50 P.3d 879, 896 (Colo.2002).
When a judicial determination is a matter of discretion, it is reviewed for abuse of discretion. Valdez v. People, 966 P.2d 587 (Colo.1998); see Pierce v. Underwood, 487 U.S. 552, 558, 108 S.Ct. 2541, 2546, 101 L.Ed.2d 490 (1988). Thus, we review the trial court's judgment under an abuse of discretion standard.
To the extent that we must determine the requirements of the HCAA, our review is de novo. Robles v. People, 811 P.2d 804, 806 (Colo.1991).

C. Future Value
Hospital relies on statutory text and legislative history when it contends that the General Assembly enacted the periodic payments provision to enable medical defendants to save money by (1) ensuring that they pay only as much for future medical expenses as plaintiffs actually need and use, and (2) taking advantage of efficiencies in the commercial annuity market to fund periodic payments at a cost that is typically less than the jury's present value lump sum award. See §§ 13-64-102, 13-64-201, C.R.S.2006 (legislative declarations). Hospital maintains that to accomplish this goal, the cost of funding an annuity should allow a defendant to purchase an annuity at a cost less than the jury's present value award, provided that the annuity pays a plaintiff the equivalent of the future value of damages. It asserts that while "the law and the CJI verdict form call for the jury to express its lump-sum awards of damages as the present value of future damages, the jury's findings as to the gross *517 amount of future damages can be readily ascertained from the present value of those damages." Thus, it argues that the trial court erred in refusing to determine the gross future damages from the jury's present value award. We disagree.
To the extent that Hospital contends that the HCAA's primary purpose is to save money for medical defendants by the funding of annuities at less than the present value of the jury award, we note Hospital has already benefited through application of the mandatory caps on noneconomic damages and certain nonexempt economic damages and fault apportionment. The caps lowered the jury award for these types of damages from a total of $6,095,000 to $1,000,000, for which Hospital was only 60% responsible, or $600,000.
In addition, Hospital relies on California's Medical Injury Compensation Reform Act (MICRA) and several California cases that interpret the periodic payments provision of the statute, Cal.Civ.Proc.Code § 667.7 (2006). However, MICRA and the California cases interpreting it differ from the situation here.
Section 667.7(a) states in relevant part:
In any action for injury or damages against a provider of health care services, a superior court shall, at the request of either party, enter a judgment ordering that money damages or its equivalent for future damages of the judgment creditor be paid in whole or in part by periodic payments rather than by a lump-sum payment if the award equals or exceeds fifty thousand dollars ($50,000) in future damages. In entering a judgment ordering the payment of future damages by periodic payments, the court shall make a specific finding as to the dollar amount of periodic payments which will compensate the judgment creditor for such future damages.
As Hospital notes, the California Supreme Court holds that "the [trial] court must fashion the periodic payments based on the gross amount of future damages." Salgado v. County of Los Angeles, 19 Cal.4th 629, 639, 80 Cal.Rptr.2d 46, 967 P.2d 585, 590 (1998); accord Schiernbeck v. Haight, 7 Cal.App.4th 869, 878, 9 Cal.Rptr.2d 716, 722 (1992) (when a party requests periodic payments pursuant to MICRA, the court must fashion the periodic payments based on the gross amount of future damages); see Hrimnak v. Watkins, 38 Cal.App.4th 964, 974, 45 Cal.Rptr.2d 514, 520 (1995) ("The proper approach, however, is for the jury to determine the gross amount of future damages and for the court to structure a periodic payment schedule based on that amount." (emphasis added)).
Hospital nevertheless relies on Salgado for its arguments that the trial court should be allowed to determine a future damages award based on the present value found by the jury and that a defendant may fund the resulting schedule of periodic payments by purchasing an annuity, even if the annuity costs less than the jury's present value award. Hospital points to language from Gorman v. Leftwich, 218 Cal.App.3d 141, 266 Cal.Rptr. 671 (1990), cited by the Salgado court, that the trial court may supplement trial testimony with additional postverdict testimony to determine gross damages and in turn fashion a schedule of periodic payments. However, Salgado ultimately held that the judgment must fall within the parameters of the verdict and the integrity of the fact finder's verdict must be maintained. Salgado, supra, 19 Cal.4th at 648, 80 Cal.Rptr.2d 46, 967 P.2d at 596; see Holt v. Regents of Univ. of Cal., 73 Cal.App.4th 871, 880, 86 Cal. Rptr.2d 752, 758-59 (1999) (the present value cannot be used as the figure to be periodized; periodic payments are based on the gross amount of the future damages). Hospital also relies on language from Holt, supra, stating that as a general rule, the manner in which the defendant complies with a judgment ordering periodic payments of economic damages in a MICRA case is the defendant's decision, regardless of any finding of present value. We are not persuaded.
As relevant here, the HCAA provides "the jury shall determine the present value of future damages and . . . the court shall enter judgment for the periodic payment of future damages." Section 13-64-205(1)(d). There is no requirement for the jury to record the gross amount of future damages in its verdict or for the trial court to use this gross future amount in determining periodic payments.
*518 In addition, the trial court is generally prohibited from inquiring into the deliberative process of the jury, see CRE 606(b); People v. Kriho, 996 P.2d 158, 167 (Colo.App. 1999), and in any event, the court has discretion to determine the form of funding and distribution of the periodic payments. See HealthONE v. Rodriguez, supra, 50 P.3d at 896.
The jury here was instructed to determine plaintiff's total of future damages and the present value of those damages:
If you determine the [plaintiff] will probably have future damages set out in Question 13 or Question 16 of Special Verdict Form B, then the amount of any damages you determine for any category must be stated in terms of its "present value."
To state any future damages in any category in terms of their present value, you must:
(1) determine the total damages for the injuries, damages or losses the plaintiff[] will have in that category in the future, for the period of time plaintiff[] will probably have those injuries, damages or losses and then
(2) determine the present value of those total damages in each category by discounting them by a reasonable commercial rate to today's value.
The jury was not instructed to enter a verdict as to the amount of future damages or the rate it used in calculating present value, and Hospital did not request an instruction requiring the jury to state the amount of future damages. Rather, the special verdict form submitted to the jury required only that the present value of the future damages be recorded.
On remand, Hospital presented evidence from its expert that the trial court could reasonably infer the rate used by the jury and so arrive at its own calculation of future damages. However, the expert admitted that he did not know what was in the minds of the jurors in making a present value award and could not tell whether they thought it would be paid out in the future or present. Hospital, nevertheless, advocated purchase of an annuity at a cost less than present value based on a postverdict calculation of future damages.
To determine the value of future damages from the present value of those damages presented in the jury's verdict, the trial court would have had to determine which discount rate the jury used to calculate the present value verdict from its findings of future damages. However, as noted, it is inappropriate for the trial court to delve into the process the jury used to arrive at its present value calculations. See CRE 606(b).
Here, Hospital does not seek a new trial for a finding of future damages. Nor does it assert that plaintiff will be overpaid. Instead, its argument  that its proposal costs less and guarantees coverage for plaintiff regardless of how long he lives  accepts the present value verdict but asks the court to make a future damages determination.
Under these circumstances, the judgment reflected the jury's computation of the present value of future damages, and thus the trial court did not abuse its discretion in accepting plaintiff's proposed order of judgment regarding the periodic payments.

II. Attorney Fees
Plaintiff argues that Hospital's appeal of the trial court's order is frivolous and Hospital should be sanctioned pursuant to C.A.R. 38. We disagree.
C.A.R. 38(d) provides that an appellate court sanction a party filing an appeal if the court determines that the appeal is frivolous. An appeal is considered frivolous if "the proponent can present no rational argument based on the evidence or law in support of a proponent's claim or defense, or the appeal is prosecuted for the sole purpose of harassment or delay." Mission Denver Co. v. Pierson, 674 P.2d 363, 366 (Colo.1984). A lawyer "may advance a [theory] not recognized under existing law if it can be supported by a good faith argument for an extension, modification, or reversal of existing law." Mission Denver, supra, 674 P.2d at 365.
Here, Hospital proposed an interpretation of the HCAA citing law from California. *519 Thus, we conclude that Hospital's appeal is not frivolous and deny plaintiff's request for sanctions. See Giguere v. SJS Family Enters., Ltd., 155 P.3d 462, 474 (Colo.App.2006); Zivian v. Brooke-Hitching, 28 P.3d 970, 974-75 (Colo.App.2001).
Judgment affirmed.
ROY and FURMAN, JJ., concur.