[No. S065021. Dec. 7, 1998.]

JABES SALGADO, a Minor, etc., et al., Plaintiffs and Appellants, v. COUNTY OF LOS ANGELES et al., Defendants and Appellants.

## COUNSEL

Manuel Hidalgo, Rolando Hidalgo, Tanke & Willemsen, Tony J. Tanke and Gary L. Simms for Plaintiffs and Appellants.

Bonne, Bridges, Mueller, O'Keefe & Nichols, N. Denise Taylor, Paul F. Arentz, Greines, Martin, Stein & Richland, Martin Stein, Kent L. Richland and Feris M. Greenberger for Defendants and Appellants.

Daniel U. Smith, Mary E. Alexander, Bruce A. Broillet, David S. Casey, Jr., Deborah David, Douglas Devries, Laurence E. Drivon, Thor Emblem,

Joseph F. Harbison III, Ian Herzog, Steven J. Kleifield, Harvey R. Levine, Moses Lebovits, Wayne McClean, David A. Rosen, Leonard Sacks, Chris Spagnoli, Robert B. Steinberg, James C. Sturdevant, Lea-Ann Tratten, Rick Simons, Thomas G. Stolpman, William D. Turley, Roland Wrinkle, Horvitz & Levy, Ellis J. Horvitz and S. Thomas Todd as Amici Curiae.

## OPINION

**MOSK, J.**—This matter involves the application of Code of Civil Procedure section 667.7 and Civil Code section 3333.2, both of which were enacted as part of the Medical Injury Compensation Reform Act (MICRA). The former provision requires the superior court, at the request of either party, to order that an award for future damages exceeding $50,000 in an action against a health care provider be paid on a periodic basis rather than in a lump sum. The latter provision places a cap of $250,000 on the liability of a health care provider, in an action based on professional negligence, for an injured plaintiff's noneconomic losses.

Through his guardian ad litem, Jabes Salgado (hereafter plaintiff) brought this action for medical malpractice against, among others, the County of Los Angeles (hereafter County) for permanent injuries sustained at Harbor UCLA Medical Center during his birth. For his noneconomic injuries, the jury awarded plaintiff $10,000 for past and $550,000 for future pain and suffering. The superior court applied the statutory cap of $250,000 and, subtracting the $10,000 award, reduced the award for future pain and suffering to $240,000. It ordered that sum to be paid on a periodic basis in equal installments over the course of plaintiff's life expectancy of 66.8 years, funded by a $61,785 annuity purchased by defendant. For his economic injuries, the jury awarded $125,000 for future medical costs and found that the present value of that award was $50,000. The superior court ordered that the $125,000 award also be paid on a periodic basis in equal installments over the course of plaintiff's life expectancy of 66.8 years, funded by a $32,179 annuity purchased by defendant.

For the reasons stated below, we conclude that, although the superior court not unreasonably required payment of noneconomic damages over a period of 66.8 years, it erred in reducing the sum used to fund the stream of future periodic payments from $240,000 to $61,785. As will appear, plaintiff was entitled to periodic payment of future noneconomic damages totaling, over time, the equivalent of an immediate lump-sum award of $240,000 at the time of judgment, i.e., what the sum of $240,000 would have yielded if invested prudently at the time of judgment. The superior court also erred in

disregarding the jury's present value calculation of future economic damages. Accordingly, we reverse the judgment of the Court of Appeal and remand for recalculation of the awards.

I

On June 15, 1988, plaintiff was born at Harbor UCLA Medical Center, owned by County. During a difficult vaginal delivery, physicians fractured plaintiff's left arm and damaged the brachial plexus nerves in his right arm, resulting in a permanent disability to his upper arm known as Erb's Palsy. As a consequence of his injuries, plaintiff has no reflexes and a 30 percent loss of strength in his right arm; he holds it in an unusual position, with the shoulder turned inward, and is unable to rotate it; nor can he raise the arm above shoulder height.

On January 26, 1989, plaintiff filed a medical malpractice action against County.

At trial, the jury was instructed regarding the measure of damages for pain and suffering. The instruction explained: "No definite standard or method of calculation is prescribed by law by which to fix reasonable compensation for pain and suffering. Nor is the opinion of any witness required as to the amount of such reasonable compensation. Furthermore, the argument of counsel as to the amount of damages is not evidence of reasonable compensation. In making an award for pain and suffering you shall exercise your authority with calm and reasonable judgment and the damages you fix shall be just and reasonable in the light of the evidence. [¶] This is non-economic damage."

The jury was also instructed regarding the measure of damages for future economic losses. The instruction explained that an award for such losses "shall include the reasonable value of medical care and therapy reasonably certain to be required and given in the future. [¶] This is economic damage." In addition, the jury was instructed regarding future economic losses as follows: "Any award for future economic loss must be only for its present cash value. [¶] Present cash value is the present sum of money which, together with the investment return thereon when invested so as to yield the highest rate of return consistent with reasonable security, will pay the equivalent of lost future benefits at the times, in the amounts, and for the period that you find such future benefits would have been received. [¶] The present cash value will, of course, be less than the amount you find to be the loss of such future benefits."

The jury was instructed that it could consider the fact that the life expectancy of plaintiff, who was then five years old, was 66.8 additional

years. In closing argument, counsel for plaintiff showed the jury amounts indicated by experts for future economic damages, stating that "the present value is what the court instructed you to follow." Counsel for County did not refer to the issue.

The jury returned a verdict of liability against County. In a special verdict, it found that plaintiff sustained injury in the amount of $10,000 for past pain, suffering, inconvenience, physical impairment or disfigurement, and would sustain injury in the amount of $550,000 for future such noneconomic injuries. It found that he would sustain injury in the amount of "approximately $125,000" for future medical care and therapy, and determined the present value of that award was $50,000. It found that he would sustain "zero amount [of] dollars" in injury for loss of future earnings.

County brought posttrial motions to cap noneconomic damages at $250,000, pursuant to Civil Code section 3333.2, and for periodic payment of future damages, pursuant to Code of Civil Procedure section 667.7. Plaintiff submitted a variety of proposals for periodic payments, which would have provided for a stream of payments over a short period of years, during the time of his education and early job training. After considering the proposals, the superior court determined that because plaintiff would suffer noneconomic injury from his disability throughout his life, "setting periodic payments to correspond with his life expectancy is proper in this case." It authorized County to purchase annuities to fund the periodic payments.

The superior court entered a judgment for plaintiff to the following effect. County was ordered to pay to plaintiff, if living, monthly payments of $299.26 over a period of 66 years, 10 months, "representing the future pain and suffering award of $240,000." It was ordered to pay to plaintiff, if living, monthly payments of $155.87 over a period of 66 years, 10 months, "representing the future medical expenses award of $125,000." It was also ordered to pay plaintiff's attorney fees and costs. Liability for the periodic payments was to be assigned to an annuity provider, which would purchase an annuity contract from an insurance company. On purchase of the annuities, plaintiff was to execute a satisfaction of judgment against County. The order did not include provision for payment of plaintiff's award of $10,000 for past pain and suffering or an outstanding Medi-Cal lien of $2,623.89. Both parties appealed.

The Court of Appeal reversed the judgment to the extent that it required the County to pay plaintiff's attorney fees and costs, but affirmed in its entirety the award of periodic payments, observing: "We acknowledge this result is harsh as applied to Jabes. Nevertheless it is compelled by the

express terms of Civil Code section 3333.2 and Code of Civil Procedure section 667.7." It remanded the matter to the superior court with directions to enter a new judgment consistent with its opinion. We granted review.

## II

Code of Civil Procedure section 667.7, subdivision (a), provides that "[i]n any action for injury or damages against a provider of health services, a superior court shall, at the request of either party, enter a judgment ordering that money damages or its equivalent for future damages of the judgment creditor be paid in whole or in part by periodic payments rather than by a lump-sum payment if the award equals or exceeds fifty thousand dollars ($50,000) in future damages." " 'Future damages' includes damages for future medical treatment, care or custody, loss of future earnings, loss of bodily function, or future pain and suffering of the judgment creditor." (*Id.*, subd. (e)(1).) With the exception of damages awarded for loss of future earnings, periodic payments are subject to modification in the event of the death of the judgment creditor. (*Id.*, § 667.7, subds. (b)(1), (c).)[1]

Code of Civil Procedure section 667.7, subdivision (f), explains the legislative purpose as follows: "By authorizing periodic payment judgments, it is the . . . intent of the Legislature that the courts will utilize such judgments to provide compensation sufficient to meet the needs of an injured plaintiff and those persons who are dependent on the plaintiff for whatever period is necessary while eliminating the potential windfall from a lump-sum recovery which was intended to provide for the care of an injured plaintiff over an extended period who then dies shortly after the judgment is paid."

In *American Bank & Trust Co.* v. *Community Hospital, supra,* 36 Cal.3d 359, a majority upheld Code of Civil Procedure section 667.7 against claims that it violated the state and federal constitutional guarantees of due process, equal protection, and the right to jury trial, concluding, inter alia, that it was rationally related to the legitimate objective of reducing insurance costs. "As the legislative history of MICRA indicates, one of the factors which contributed to the high cost of malpractice insurance was the need for insurance companies to retain large reserves to pay out sizable immediate lump sum awards. The adoption of a periodic payment procedure permits insurers to retain fewer liquid reserves and to increase investments, thereby reducing

---

[1]"Although the statute does not expressly provide what modification should follow the plaintiff's death, in context it is evident that the Legislature contemplated that a defendant's continuing liability for future damages other than damages for loss of future earnings would be subject to termination on the plaintiff's death." (*American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359, 368, fn. 8 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233]; see also *id.* at p. 373; Code Civ. Proc., § 667.7, subds. (b)(2), (c), (f).)

the costs to insurers and, in turn, to insureds. In addition, the portion of section 667.7 which provides for termination of a significant portion of the remaining future damage payments in the event of the plaintiff's death is obviously related to the goal of reducing insurance costs." (36 Cal.3d at pp. 372-373.) ■ If requested by a party, periodic payments are mandatory. "[T]he legislative history of section 667.7 leaves little doubt that here the Legislature intended to impose a mandatory duty on the trial court to enter a periodic payment judgment in cases falling within the four corners of the section." (*Fein* v. *Permanente Medical Group* (1985) 38 Cal.3d 137, 155 [211 Cal.Rptr. 368, 695 P.2d 665], fn. omitted.)

*American Bank & Trust Co.* requires that, in order to preserve the right to a jury trial, Code of Civil Procedure section 667.7 should be interpreted to require the jury to designate the portion of its verdict that is intended to compensate for future damages. (36 Cal.3d at p. 376.) "Under section 667.7's procedure, this 'future damage' figure plays a number of crucial roles: (1) it identifies the amount that the jury has determined as attributable to past and present damages, an amount which the plaintiff will be entitled to receive in an immediate lump sum payment at the time of judgment, and (2) it determines whether the periodic payment procedure will be applicable to the case or not—depending on whether future damages are found to equal or exceed $50,000." (*Ibid.*)

■ The periodic payment schedule is based upon the award of future damages. *Hrimnak* v. *Watkins* (1995) 38 Cal.App.4th 964, 974 [45 Cal.Rptr.2d 514] explains: "When a party properly invokes section 667.7, '. . . the [trial] court must fashion the periodic payments based on the *gross* amount of future damages.' [Citations.] This is because if a present value award is periodized, a plaintiff might not be fully compensated for his or her future losses; the judgment, in effect, would be discounted twice: first by reducing the gross amount to present value and second by deferring payment." (Italics in original.) "The proper approach . . . is for the jury to determine the gross amount of future damages and for the court to structure a periodic payment schedule based on that amount." (*Ibid.*) "In structuring a periodic-payment schedule under section 667.7, a trial court is 'guided by the evidence of future damages' introduced at trial. [Citations.] The fundamental goal in this respect is to attempt to match losses with compensation 'to ensure that money paid to an injured plaintiff will in fact be available when the plaintiff incurs the anticipated expenses or losses in the future.'" (*Id.* at p. 975.)

Code of Civil Procedure section 667.7 applies equally to economic and noneconomic damages. (*Id.*, subds. (a) & (e).) In both cases, the fundamental goal is to match losses with compensation as the losses occur.[2]

■ Civil Code section 3333.2, subdivision (b), places a cap on a defendant's liability for noneconomic damages: "In no action shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000)." The purpose of the provision is to limit the out-of-pocket costs of defendants to $250,000. It places no limit on the amount of injury sustained by the plaintiff, as assessed by the trier of fact, but only on the amount of the defendant's liability therefor.

Civil Code section 3333.2 applies to the total of all noneconomic damages, past and future. Thus, an immediate lump-sum award of past noneconomic damages exceeding $250,000 must be capped at that amount. An immediate lump-sum award of future noneconomic damages exceeding $250,000 is subject to the same cap.

If the award for future noneconomic damages is to be paid out periodically pursuant to Code of Civil Procedure section 667.7, the plaintiff is entitled to receive, over time, the equivalent of the immediate lump-sum award at the time of judgment, capped at $250,000, i.e., the amount that the capped award would have yielded if invested prudently at the time of judgment. Any other result would be neither logical nor consistent with the MICRA provisions plainly entitling an injured plaintiff to an award *not exceeding*—i.e., up to the amount of—$250,000. Thus, a plaintiff who receives an award of noneconomic damages in an immediate lump sum at the time of judgment

---

[2]The Uniform Periodic Payment of Judgment Act does not require periodic payment of damages for future noneconomic losses. (14 West's U. Laws Ann. (1998 supp.) U. Periodic Payment of Judgments (1990) § 2.) The comment to section 2 of the act explains: "Although most states consider noneconomic loss to be sufficiently quantifiable to permit a jury to assign a lump-sum dollar amount to such loss, it does not appear to be realistic to carry the concept of quantification to the point of yearly (or monthly) payments for noneconomic loss, adjusted for inflation . . . . There is no universal measure of the value of pain, embarrassment over facial scars, or the crippling loss of limbs or bodily functions. Yet, juries do determine the monetary value of these injuries. Asking a jury to annualize a value for these types of noneconomic losses and fix an inflation factor for each future year seems to compound the unreality of the task. . . . For these reasons and because practicality requires that funds be made available for the payment of attorney's fees and expenses, it was decided that future damages for noneconomic loss should not be subject to periodic payments under the Act." (*Id.* at p. 15.) In providing for periodic payment of noneconomic damages under Code of Civil Procedure section 667.7, the Legislature evidently rejected the concerns expressed in the comment. Nonetheless, at oral argument counsel for amici curiae California Medical Association, California Dental Association, and California Healthcare Association observed that defendant's request for periodic payment of noneconomic damages in this matter was "aberrational"; defendants generally prefer payment of an up-front lump sum.

will be recompensed no more and no less than a plaintiff who receives the identical award, in terms of its value in current dollars, in the form of a stream of periodic payments, either at his own request or at the request of the defendant. Similarly, a defendant who pays an award in an immediate lump sum at the time of judgment will pay no more and no less than a defendant who pays out the identical award, in terms of its value in current dollars, in the form of a stream of periodic payments, either at its own request or at the request of the plaintiff. In this way, neither the plaintiff nor the defendant will achieve an undue windfall simply depending on whether the full award for noneconomic damages is paid at once at the time of judgment or is paid over time.

As discussed, Code of Civil Procedure section 667.7 was enacted for the express purpose of avoiding a windfall to the plaintiff's family in the event of his or her premature death, not of providing an unfair benefit to the defendant by reducing its obligation to less than the equivalent of a lump-sum award of $250,000 received at the time of the judgment. Indeed, such a reduction would appear to contradict the legislative directive of the provision "to provide compensation sufficient to meet the needs of an injured plaintiff . . . for whatever period is necessary . . . ." (Code Civ. Proc, § 667.7, subd. (f).) In addition, under the superior court's approach, the time-related penalty would affect plaintiffs differently depending on their life expectancy: a child with a long life expectancy, would receive far less in terms of the real value of an award than would an older person. Such an arbitrary result would appear to be inconsistent with the purpose of Code of Civil Procedure section 667.7.

"It must be remembered that the $250,000 limitation established by MICRA represents the Legislature's attempt to cap noneconomic damages and does not reflect a legislative determination that a person injured as a result of medical malpractice does not suffer such damages." (*Schiernbeck* v. *Haight* (1992) 7 Cal.App.4th 869, 880 [9 Cal.Rptr.2d 716].) The $250,000 cap, then, is not a legislative attempt to estimate the true damages suffered by plaintiffs, but rather an attempt to control and reduce medical malpractice insurance costs by placing a predictable, uniform limit on the defendant's liability for noneconomic damages.

In *Fein* v. *Permanente Medical Group, supra*, 38 Cal.3d at page 163, we explained the Legislature's choice of a uniform dollar limit rather than, for example, a percentage reduction of all noneconomic damage awards: "One of the problems identified in the legislative hearings was the unpredictability of the size of large noneconomic damage awards, resulting from the inherent difficulties in valuing such damages and the great disparity in the price tag

which different juries placed on such losses. The Legislature could reasonably have determined that an across-the-board limit would provide a more stable base on which to calculate insurance rates. Furthermore, . . . the Legislature may have felt that the fixed $250,000 limit would promote settlements by eliminating 'the unknown possibility of phenomenal awards for pain and suffering that can make litigation worth the gamble.' " Because predictability was the goal, as *Fein* suggests, Civil Code section 3333.2 should be interpreted to provide a uniform limit of $250,000 in current dollars at the time of judgment regardless of when the damages are actually to be paid. Any lower limit simply provides the defendant with a windfall, without adding to the predictability of judgments.

In addition, the general view at the time of MICRA's adoption, in 1975, appears to have been that the "present value rule"—the rule that future damages must be reduced to the present value if awarded as a lump sum—does *not* apply to pain and suffering damages. (See, e.g., *Bradock* v. *Seaboard Air Line Railroad Company* (Fla. 1955) 80 So.2d 662, 666 [observing that the "weight of authority" is against reduction of noneconomic damages to present value]; see also *Oliveri* v. *Delta S.S. Lines, Inc.* (2d Cir. 1988) 849 F.2d 742, 750-751 [citing decisions from the Fifth, Eighth, Ninth and Tenth Circuits and Florida, Pennsylvania, Georgia, Texas, and Illinois to the effect that most courts hold that awards for future noneconomic damages should not be discounted to present value in the same manner as awards for future economic losses, because of the arbitrariness and artificiality of such a method].)

As *Oliveri* explains, in the case of an award of economic damages such as lost future earnings, the jury makes an estimate of the actual amounts that plaintiff would have received over the course of his working years. (*Oliveri* v. *Delta S.S. Lines, Inc.*, *supra*, 849 F.2d at p. 749.) "Since those dollars will be received now, rather than in the years they would have been earned absent the injury, it makes sense to discount them to present value. And since the interest rate used to discount to present value is a function of lenders' estimates of future inflation, it makes sense to reflect the likely inflation rate in the discounting process, either by adjusting the wages upward to reflect inflation or adjusting the interest rate downward to arrive at an inflation-adjusted discount rate." (*Ibid.*) In the case of an award of noneconomic damages, however, "the jury is not determining the precise amount of dollars the plaintiff would have received in future years. On the contrary, the jury is invited to select some general sum that the plaintiff should receive now as compensation for the pain and suffering he will endure in future years. Normally, that sum is a round number, determined without any precise calculation. It is rather artificial to take such a number

. . . and then refine it with precision to present value by an inflation-adjusted discount rate." (*Ibid.*)

■ As these cases suggest, a jury award for future pain and suffering has generally been regarded as the jury's rough estimate of the amount of money paid at the time of judgment that would compensate the plaintiff for all his future pain and suffering, rather than as the gross amount of an annuity that would compensate the plaintiff year by year for his suffering in each year. It would seem to follow, in the absence of any legislative history to the contrary, that when the Legislature capped such awards at $250,000, it meant the limit to apply to a lump sum paid at the time of the judgment, or to the present value of periodic future payments, but not to the gross sum of such future payments.

■ The defendant liable for periodic payments may itself fund the periodic payments ordered by the superior court or the parties may stipulate to satisfaction of the judgment through the purchase of an annuity. (See *Schneider* v. *Kaiser Foundation Hospitals* (1989) 215 Cal.App.3d 1311, 1314 [264 Cal.Rptr. 227] [attorney fees on the periodic payment portion of a judgment are to be based on the present value of the periodic payments, which is "normally best represented by the cost of the annuity purchased to fund the payments"]; 14 West's U. Laws Ann., *supra*, U. Periodic Payment of Judgments (1990) § 11 [authorizing the funding of periodic payments by annuity].) If an annuity is used, it must be sufficient to cover a stream of periodic payments that total the amount of future damages. (See *American Bank & Trust Co.* v. *Community Hospital, supra*, 36 Cal.3d at pp. 376-377 [court fashions details of a periodic payment schedule based on the amount of *future damages* designated by the jury].) The plaintiff is entitled to no less, and to no more.[3]

Of course, a defendant preferring to avoid making a lump-sum payment cannot be *required* by the court to purchase an annuity or otherwise to immediately satisfy in full a judgment of periodic payments by means of a lump-sum payment. Rather, Code of Civil Procedure section 667.7 may be

---

[3]In this case, as discussed, defendant sought to satisfy the judgment through purchase of annuities, presumably to reduce its overall out-of-pocket costs. As amici curiae California Medical Association, California Dental Association, and California Healthcare Association point out, defendants may, in some instances, obtain an additional savings by funding periodic payments with an annuity purchased from an insurance company. Even though the jury, based on the evidence presented at trial, concludes that the plaintiff has a fairly long life expectancy, life insurance companies, after reviewing the plaintiff's medical records and applying actuarial principles, frequently are willing to assume a shorter life expectancy and price an annuity accordingly. Such a savings to defendant has no adverse impact on the plaintiff because the annuity must continue to pay periodic payments even if the plaintiff lives longer than the life insurance company anticipated.

used by the defendant to avoid buying an annuity or taking any other step that is tantamount to immediate satisfaction of a future damages award of $50,000 or more. (See *Hrimnak* v. *Watkins, supra,* 38 Cal.App.4th at p. 982 [permitting parties to stipulate to satisfaction of judgment through purchase of an annuity, but suggesting that the court cannot compel the arrangement].) Nor can a plaintiff be required to agree to the use of an annuity as a means of funding future payments. " 'If plaintiff wishes to accept an annuity as satisfaction of the judgment she may do so, but the law does not require her to agree to that. Defendants' obligation is to pay the money, in the amounts and at the times that will be specified." (*Ibid.*) As *Hrimnak* observes, Code of Civil Procedure section 667.7 makes no reference to a requirement concerning annuity funding or to satisfaction of judgment. "[I]f the law is to impose such a requirement, the law should come from the Legislature and not from the courts." (38 Cal.App.4th at p. 982.)[4]

The Court of Appeal thus erred in concluding that its concededly "harsh" result was compelled by *American Bank & Trust Co.* v. *Community Hospital, supra,* 36 Cal.3d 359, which it understood to authorize "insurers to purchase annuities to fund periodic payments at a smaller cost than would be required to make a lump sum payment." Not so. *American Bank & Trust Co.* makes no mention whatever of annuities; nor does it otherwise permit the defendant who requests periodic payments to drastically reduce the total value of a capped award of future noneconomic damages by making periodic payments without any adjustment to account for what the award would have yielded if invested prudently at the time of judgment. Rather, as discussed, *American Bank & Trust Co.* points to the savings achieved simply by virtue of permitting the defendant or insurer to avoid making a large one-time lump-sum payment: "The adoption of a periodic payment procedure permits insurers to retain fewer liquid reserves and to increase investments, thereby reducing the costs to insurers and, in turn, to insureds. In addition, the portion of section 667.7 which provides for termination of a significant portion of the remaining future damage payments in the event of the plaintiff's death is obviously related to the goal of reducing insurance costs." (*American Bank & Trust Co.* v. *Community Hospital, supra,* 36 Cal.3d at p. 373.) Such savings may be substantial. For example, if a health care provider statistically calculates that it will experience one judgment against it a year, it knows that its annual noneconomic damages will be statutorily capped at $250,000. Under Code of Civil Procedure section 667.7, it may make periodic payments of those damages, and thereby reduce the annual reserves by a corresponding amount. Excess reserves may be further reduced in the event of a plaintiff's premature death. The potential profits to the insurer

---

[4]County has conceded that the trial court erred in requiring plaintiffs to execute a satisfaction of judgment. (See *Hrimnak* v. *Watkins, supra,* 38 Cal.App.4th at p. 982.)

from investing those excess reserves may be passed on to the health care providers in the form of lower insurance costs.

### III

Turning to the matter before us, we apply the foregoing principles to the issues presented.

### A

■ The jury awarded plaintiff $10,000 for past noneconomic damages and $550,000 for future noneconomic damages. The superior court reduced the award for future noneconomic damages to $240,000 (the statutory cap of $250,000 minus $10,000 for past noneconomic damages). It permitted County to pay the judgment for future noneconomic damages by purchasing an annuity for $61,785.

County argues that the award of $550,000 for future noneconomic damages was correctly treated as representing the jury's finding of the amount of future damages, not the value in current dollars of the pain and suffering plaintiff would suffer in the future. According to County, the jury in fact understood that it was arriving at a figure in inflated future dollars and the superior court properly reduced that future sum of $550,000 to $240,000, to be paid periodically and funded by an annuity that would cost $61,785 (roughly the present value of $240,000).

Plaintiff argues that the $550,000 represented the value in current dollars of the pain and suffering plaintiff would suffer in the future. According to plaintiff, the jury understood that it was arriving at a figure in current dollars. He argues that when the superior court reduced the award to comply with the $250,000 MICRA cap, that reduced amount also represented current dollars whose value must be preserved if the award is to be paid periodically over the course of time.[5]

The record as a whole suggests that plaintiff is correct: the jury calculated the value of plaintiff's future noneconomic losses in current dollars—i.e.,

---

[5]As stated by plaintiff: "When the County elects to pay Jabes' award for future noneconomic damages in one lump sum, the $240,000 jury award (in 1993 dollars) literally translates to $240,000 in cash paid (again, in 1993 dollars). Where the County elects to pay Jabes' award through periodic payments, the $240,000 jury award in 1993 dollars must still translate to the 'equivalent' of $240,000 in 1993 dollars, though paid in installments." Instead, County was permitted to take the same $240,000 that it would otherwise be required to pay at once at the time of judgment and dole it out over 66.8 years, retaining for itself all of the value of investing the money during those years. By purchasing an annuity, it could reap that value all at once, paying only a total of $61,785 to fund the judgment, instead of the $240,000 for which it was liable. In effect, then, the superior court erroneously treated the capped award of

what he was entitled to receive from the County in an immediate lump-sum payment—not in future dollars. The special verdict form required the jury only to state the amount of damage that "will be sustained by plaintiff . . . for future pain, suffering, inconvenience, physical impairment or disfigurement." The jury was instructed that "[n]o definite standard or method of calculation is required by law by which to fix reasonable compensation for pain and suffering." Moreover, it was not told that damages for past and future noneconomic losses may be subject to periodic payments. Nor was it told over what period such periodic payments could be made. For this reason, too, it is more likely than not that the jury assumed that the sum it fixed as reasonable compensation for future noneconomic losses would be paid to plaintiff in an immediate lump sum at the time of judgment, i.e., that, like "[a]ny award for future economic loss," the award for future noneconomic loss "must be only for its present cash value." We note, moreover, that neither party mentioned future pain and suffering damages in closing argument. Thus, this does not appear to be a case in which plaintiff's counsel suggested that future noneconomic damages should reflect anything other than a present value estimate or otherwise attempted to ensure an inflated award.

Accordingly, although the instruction and the verdict form made no express reference to present value, the jury's task is logically best understood as having to determine the present value of future pain and suffering; the jury was not asked to discount the special verdict for noneconomic damages because it was already a present value sum.

We conclude, therefore, that the superior court was required to apply the statutory cap to the amount plaintiff would have received in an immediate lump-sum payment at the time of the judgment. The total of periodic payments would have to be sufficient to pay, over time, the equivalent, in current dollars, of that immediate lump-sum payment, i.e., the amount that the award would have yielded if invested prudently at the time of judgment. Thus, the superior court correctly reduced the verdict of $550,000 to $240,000 under MICRA. It erred, however, in permitting County to pay out that sum over 66.8 years, in a stream of payments that would amount in total only to the equivalent of an immediate lump-sum payment of $61,785 at the time of judgment, rather than of the $240,000 to which plaintiff was entitled in compensation for his injury.

To avoid confusion regarding the jury's task in future cases, we conclude that when future noneconomic damages are sought, the jury should be

$240,000 as a sum in future dollars, and reduced it, for all purposes, to a present value of $61,785.

instructed expressly that they are to assume that an award of future damages is a present value sum, i.e., they are to determine the amount *in current dollars paid at the time of judgment* that will compensate a plaintiff for future pain and suffering. In the absence of such instruction, unless the record clearly establishes otherwise, awards of future damages will be considered to be stated in terms of their present or current value.

As *Oliveri* observes, in determining "the sum that the plaintiff should have now as compensation for the pain and suffering he will endure," juries "[n]o doubt . . . intuitively make some sort of rough present value discount in determining awards for non-pecuniary losses, recognizing that their awards may be invested." (*Oliveri* v. *Delta S.S. Lines, Inc., supra,* 849 F.2d at p. 751.) Indeed, because the sum to be awarded is compensation for the pain and suffering to be incurred in future years and because the money received now can be invested, it makes sense to give some recognition to the time value of money in determining the sum the plaintiff should have available now and during the future years throughout which his disability will continue. *Oliveri* explains that the jury, in determining the amount that the plaintiff should be awarded now as compensation for pain and suffering, can properly be told to consider the time value of the award, but the trial court "should make it clear that the precise method appropriate for discounting awards for pecuniary losses need not be followed." (*Ibid.*) Indeed, it seems anomalous to assume that juries can and generally do determine the amount of money that must be paid now to compensate for future pain and suffering, but then to withhold instructional language that would describe the nature of this task. Such instructional guidance will reduce the risk of a jury's delivering a future noneconomic damages award that is inflated or excessive based on the misleading arguments of counsel. For these reasons, we recommend the adoption of a similar approach by our trial courts.

Instructing that the jury must calculate a present value will, as a practical matter, also simplify application of the statutory cap of $250,000 under Civil Code section 3333.2. (See *Hrimnak* v. *Watkins, supra,* 38 Cal.App.4th at pp. 981-982 [assuming that future pain and suffering award, which was reduced to the statutory maximum of $250,000, was a present value sum].) If the final award of noneconomic damages exceeds $50,000, in current dollars, it remains subject to periodic payment upon request of either party, under Code of Civil Procedure section 667.7.[6]

County contends that the trial court was "legally and constitutionally" required to fashion the periodic payment schedule based on the jury's

---

[6]The present value of the judgment is also ordinarily used to determine attorney fees. Additional uses of the present value figure include determining whether a prejudgment interest penalty is owed under Code of Civil Procedure section 998 and Civil Code section 3291, and in setting off a codefendant's settlement. (*Hrimnak* v. *Watkins, supra,* 38 Cal.App.4th

determination of the total amount of *future* noneconomic damages, not its present value, i.e., the amount of an immediate lump-sum award. It argues that any other approach violates the plaintiff's constitutional right to a jury trial. The point, as applied to noneconomic damages, is without merit. Indeed, *Gorman* v. *Leftwich* (1990) 218 Cal.App.3d 141, 150 [266 Cal.Rptr. 671], which it repeatedly cites in support of this proposition, holds to the contrary: "[W]here the jury returns only a present value verdict, a trial court can consider the trial testimony and, if necessary, supplement that evidence with postverdict testimony in order to determine the gross damages and in turn to fashion a schedule of periodic payments based thereon. We find nothing in such a procedure which denies either party its constitutional right to jury trial so long as the resulting judgment falls within the parameters of the verdict and the integrity of the fact finder's determination is maintained." (Citing *American Bank & Trust Co.* v. *Community Hospital, supra,* 36 Cal.3d at pp. 374-378.)

County also argues that the superior court's calculation of payments was appropriate because plaintiff "exaggerates the gravity of his injury." It points out, for example, that plaintiff's arm is not paralyzed and that his disability "should not prevent him from playing softball underhanded, catching a football, guarding for passes or playing tackle." We reject the suggestion that we should uphold an erroneous calculation of the award by the superior court because plaintiff "really" deserved less than the amount of the jury's award.

Plaintiff urges that because of the difficulties of matching periodic compensation with future pain and suffering, a MICRA-capped award of noneconomic damages should be made in a lump-sum payment at the time of the judgment. He argues that such periodic payment will often result in a plaintiff's being denied compensation for noneconomic damages already incurred, that use of a lump-sum payment does not impair the medical malpractice cost control objectives of MICRA, and that a lump-sum award can be used to pay attorney fees and other costs of litigation. He points out

---

at p. 979.) We do not address the question posed by defendant, but which was not raised below, whether the cost of an annuity to fund the judgment can properly be used by the trial court as the basis for calculating attorney fees. (See Bus. & Prof. Code, § 6146, subd. (b); *Schneider* v. *Kaiser Foundation Hospitals, supra,* 215 Cal.App.3d at p. 1314 ["[T]he value of an award of periodic payments for the purpose of calculating a contingent attorney's fee is the *present* value of the periodic payments, normally best represented by the cost of the annuity purchased to fund the payments." (Italics in original.)]; *Hrimnak* v. *Watkins, supra,* 38 Cal.App.4th at p. 979.)

that malpractice defendants and their insurers frequently stipulate to lump-sum payment of noneconomic damages upon entry of judgment.[7]

It remains the case, however, that under the present statutory scheme, County was entitled to request periodic payment of the award, and the superior court was required to so order. Plaintiff's arguments, whatever their merits, are more appropriately addressed to the Legislature.

## B

██ The superior court ordered periodic payment of the jury's award of $125,000 for future medical care over the course of plaintiff's life expectancy of 66.8 years, to be funded by an annuity at the present cost of $32,179. Plaintiff argues that the present value of its future damages was $50,000, the amount determined by the jury to be the present value of his future medical costs, not $32,179. He contends that once that present cash value was decided by the jury, it could not be disregarded in favor of a determination by the superior court of the present value of the jury's award of future damages, based on the cost of an annuity to fund future payments, without "usurping the jury's established constitutional role and prerogative as the sole judge of the facts." We agree.

We have previously held that it is not a violation of the plaintiff's jury trial right for the court to submit only the issue of the gross amount of future economic damages to the jury, with the timing of periodic payments—and hence their present value—to be set by the court in the exercise of its sound discretion. (*American Bank & Trust Co.* v. *Community Hospital, supra,* 36 Cal.3d at pp. 376-377.) That was not, however, the procedure followed in the present case. As plaintiff points out, the jury was expressly required to determine *both* the future amount of damage for medical care and therapy, and also the "present cash value" of that amount. Both defendant and plaintiff were afforded the opportunity to present expert testimony and to offer argument concerning calculation of the present value of the gross amount of future damages.

Plaintiff presented evidence from which the jury could reasonably have found that plaintiff would suffer greater economic losses relatively early in

---

[7]Significantly, the MICRA Manual prepared for the California Medical Association recommends that "the defendant should *not* request periodic payments for future noneconomic damages" (Horvitz & Levy, Medical Injury Compensation Reform Act of 1975 (MICRA) Implementation Manual (1993 rev.) at p. 98, italics in original.) Amici curiae California Medical Association, California Dental Association, and California Healthcare Association reiterate that position, arguing that unless evidence of the impact of inflation on damages for future noneconomic losses is allowed, trial courts should not periodize damages for future noneconomic losses, except, perhaps, when the period over which the payments will be made is short, so that the impact of the decreasing purchasing power of the dollar will be minimal.

life, thereby increasing the present value of the total losses. It appears that the jury was not persuaded by defendant's arguments to the contrary. For these reasons, we conclude that the superior court erred in second-guessing the jury's finding by fashioning a periodic payment scheme based on a different present value than that determined by the jury.

## C

Plaintiff contends that the superior court violated MICRA and his federal and state constitutional rights to due process, equal protection, and trial by jury by allowing County to pay his future damages, both economic and noneconomic, in equal installments over 66.8 years. He urges that, in ordering that "a net present value award" be paid over that "arbitrary" period, the superior court was effectively "wiping out all of its economic value."

We review the order for error under an abuse of discretion standard. (*Atkins* v. *Strayhorn* (1990) 223 Cal.App.3d 1380, 1398 [273 Cal.Rptr. 231].) Under that deferential standard, no error appears. Nor did the judgment violate his constitutional rights. We are unpersuaded that the superior court selected an "arbitrary" period over which future damages are required to be paid. It was not unreasonable for the court to conclude that plaintiff will suffer losses over the full course of his lifetime. Plaintiff's expert testified, for example, that he will need specialized examinations and physical therapy for the rest of his life.

It is true that the real value, over time, of the equal monthly payments to plaintiff will decrease; to that extent, the periodic payments are "front loaded," i.e., they have greater spending value while plaintiff is young than they will when he is older. Such a result is not, however, arbitrary: it is not unreasonable to assume that plaintiff's losses will be greater in his earlier years, when it is possible that he will, for example, incur the costs of attending college, receiving job training, and undergoing occupational therapy. Indeed, as discussed, it appears that the jury made a similar assumption in calculating the present value of plaintiff's economic damages. Accordingly, we conclude that the payment schedule does not fail to minimally satisfy the fundamental goal under MICRA of matching losses with compensation as the losses occur.

While the trial court's equal payment schedule was, therefore, not itself an abuse of discretion, on remand the court retains the discretion to order a different payment schedule in order to give effect to the jury's finding as to the present value of the future economic damages.

## D

■ Finally, we affirm the Court of Appeal's holding that plaintiff is not entitled to attorney fees.

As discussed, after the superior court, correctly, reduced the jury's award of future noneconomic damages by more than half pursuant to MICRA, and then, incorrectly, treated the amount as a future rather than a present value sum, it was apparently unwilling to further reduce plaintiff's damages by subtracting therefrom a sum for attorney fees. Instead, it ordered defendant to pay plaintiff's attorney fees. It erred thereby. MICRA does not provide for an award of attorney fees to the prevailing party. Accordingly, the ordinary rule, that each party bears the cost of its own attorney fees, must prevail. (See Code Civ. Proc., § 1033.5, subd. (a)(10) [providing for recovery of attorney fees as an item of costs to the prevailing party only when authorized by contract, statute, or law].) Indeed, plaintiff concedes that he is not entitled to attorney fees.

As there is presently no provision in the judgment for deduction of plaintiff's attorney fees or costs from the judgment, these will have to be calculated and deducted from plaintiff's damages on remand. Periodic payments will have to be calculated from the total judgment, after deductions for attorney fees, costs, the award for past noneconomic damages, and payment of any outstanding liens.

## IV

For the foregoing reasons, we reverse the judgment of the Court of Appeal and remand the cause to the Court of Appeal with directions to remand it in turn to the superior court to enter a new judgment consistent with this decision.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

The petition of defendants and appellants for a rehearing was denied February 17, 1999, and the opinion was modified to read as printed above.