[No. A079428. First Dist., Div. Five. July 23, 1999.]

LOREEN J. HOLT, Plaintiff and Respondent, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Defendant
and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, parts II, III, VI, VII and VIII of this opinion are not certified for publication.

874

## COUNSEL

Craddick, Candland & Conti, D. Stuart Candland, Steven L. Brown; Greines, Martin, Stein & Richland, Kent L. Richland and Jennifer L. King for Defendant and Appellant.

Baradat & Edwards, Daniel R. Baradat, David G. Edwards; and Murray M. Aron for Plaintiff and Respondent.

## OPINION

**HANING, J.**—The Regents of the University of California appeal a judgment after jury trial in favor of respondent Loreen J. Holt in her medical malpractice action. Appellant does not challenge the jury's findings on liability or damages, but contends the judgment violates the provisions of the California Medical Injury Compensation Reform Act of 1975 (MICRA) governing periodic payments of future damages (Code Civ. Proc.,[2] § 667.7) and attorney fees (Bus. & Prof. Code, § 6146).

### BACKGROUND

Since appellant's claims of error all concern the manner in which the court apportioned damages, a detailed recitation of the facts is unnecessary. Respondent, then almost 19 years old, was a patient at appellant's hospital when she suffered permanent brain damage. As a result she cannot complete college or live independently, and her only possible employment is in a sheltered workshop setting. She was 21½ years of age at the time of trial. Appellant does not dispute respondent's lifetime need for medical care, and both parties agree that at the time of trial she had a remaining life expectancy of 59 years, i.e., to age 80. Respondent's economist assumed that absent her brain damage she would work to age 65. Appellant argued that respondent suffered from a preexisting condition which would have prevented her from working, but its economist opined that if she could have worked, she had a work life of 26.7 to 28 years.

By special verdict the jury found (1) accrued noneconomic damages of $147,273, but no future noneconomic damages; (2) future medical expenses

---

[2]Unless otherwise indicated, all further section references are to the Code of Civil Procedure.

of $1,745,904; and (3) future lost earnings of $810,000, for a total award of $2,703,177, of which $2,555,904 represented future economic damages. The jury also found the present cash value of the future medical expenses and lost earnings to be $867,249 and $550,395, respectively, for a combined present value of future damages of $1,417,644.

Pursuant to section 667.7, appellant moved for periodic payments of the future damages.[3] After considering proposals from each party the court's judgment apportioned the damage award as follows: Immediate payments of (1) $147,273 for accrued noneconomic damages; (2) $56,252.50 for immediate rehabilitation expenses; (3) $283,905.22 for attorney fees; and (4) $153,947.33 for litigation expenses. Periodic payments were scheduled for 20 equal annual installments of $29,565 for lost earnings, and 42 equal annual installments of $29,367.75 for medical expenses, totaling $1,824,745.50 for future economic damages.

## DISCUSSION

We reiterate that appellant does not contend the damages were excessive. Although it obliquely claims the jury's present value findings were erroneous, it fails to support that claim with specific citation to the record or supporting authority. Consequently, we deem any such claim waived. (See, e.g., *Kim* v. *Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834].) Nor does appellant dispute respondent's right to immediate rehabilitation expenses or litigation costs. Its principal contention is that the periodic payment schedule constitutes an abuse of discretion because (a) the court misapplied the jury's present value findings in fashioning the schedule, and (b) the evidence does not support the duration of the payments or their distribution in equal rather than progressive amounts. Appellant also contends respondent's attorney fees should be calculated on the cost of an annuity to fund the periodic payments. The parties agree that judgments for periodic payments are reviewed by the abuse of discretion standard. (*Salgado* v. *County of Los Angeles* (1998) 19 Cal.4th 629, 650 [80 Cal.Rptr.2d 46, 967 P.2d 585] (*Salgado*); *Hrimnak* v. *Watkins* (1995) 38 Cal.App.4th 964, 975 [45 Cal.Rptr.2d 514] (*Hrimnak*).)

I

The principal issue is how the court should use the jury's finding of the present cash value of respondent's future economic damages to fashion a

---

[3]In pertinent part, section 667.7, subdivision (a) provides that, at the request of either party to a medical malpractice action, the court shall "enter a judgment ordering that money damages . . . for future damages of the judgment creditor be paid in whole or in part by periodic payments rather than by a lump-sum payment if the award equals or exceeds" $50,000 in future damages.

periodic payment schedule in compliance with section 667.7 and *Salgado*. In *Salgado*, the jury in a MICRA case made a specific finding of the present cash value of its gross award for future economic damages. It also rendered a gross award for noneconomic damages, to which the trial court applied the $250,000 cap of Civil Code section 3333.2. *Salgado* held that the statutory cap on noneconomic damages applied to the *present* value of the plaintiff's future noneconomic damages rather than the gross award, i.e., that the plaintiff was entitled to what "the [present value or statutory cap] would have yielded if invested prudently at the time of judgment." (*Salgado, supra*, 19 Cal.4th at pp. 635, 640.) The present case does not involve an award of future noneconomic damages; the future damages here subject to periodic payments are solely economic. It is *Salgado*'s discussion of economic damages over which the parties disagree.

In discussing future *economic* damages in *Salgado* the Supreme Court reiterated the rule in *Hrimnak*: " 'When a party properly invokes section 667.7, ". . . the [trial] court must fashion the periodic payments based on the *gross* amount of future damages." . . . This is because if a present value award is periodized, a plaintiff might not be fully compensated for his or her future losses; the judgment, in effect, would be discounted twice: first by reducing the gross amount to present value and second by deferring payment.' . . . 'The proper approach . . . is for the jury to determine the gross amount of future damages and for the court to structure a periodic payment schedule based on that amount.' " (*Salgado, supra,* 19 Cal.4th at p. 639, quoting *Hrimnak, supra,* 38 Cal.App.4th at p. 974, italics in original.) *Salgado* also reaffirmed *American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233] (*American Bank*), that trial courts in MICRA cases may "submit only the issue of the gross amount of future economic damages to the jury, with the timing of periodic payments—and hence their present value—to be set by the court in the exercise of its sound discretion." (*Salgado, supra,* at p. 649.)

The *Salgado* jury found no lost earnings, but awarded future medical costs of $125,000 and found the present cash value thereof to be $50,000. (*Salgado, supra,* 19 Cal.4th at p. 637.) The trial court ordered equal monthly payments over the course of plaintiff's life expectancy and permitted the defendant to fund the payments through an annuity costing $32,179, upon purchase of which the plaintiff was to execute a satisfaction of judgment. (*Id.* at pp. 637, 649.) The Supreme Court held that plaintiff could not be compelled to accept an annuity as a satisfaction of judgment. (*Id.* at p. 644.) It also agreed with plaintiff that "once that present cash value was decided by the jury, it could not be disregarded in favor of a determination by the superior court of the present value of the jury's award of future damages,

based on the cost of an annuity to fund future payments, without 'usurping the jury's established constitutional role and prerogative as the sole judge of the facts.' " (*Id.* at p. 649.)

*Salgado* then summarized the evidence and its ruling: "Plaintiff presented evidence from which the jury could reasonably have found that plaintiff would suffer greater economic losses relatively early in life, thereby increasing the present value of the total losses. It appears that the jury was not persuaded by defendant's arguments to the contrary. For these reasons, we conclude that the superior court erred in second-guessing the jury's finding by fashioning a periodic payment scheme based on a different present value than that determined by the jury." (19 Cal.4th at p. 649.) In remanding the case to the trial court, *Salgado* stated: "While the trial court's equal payment schedule was, therefore, not itself an abuse of discretion, *on remand the court retains the discretion to order a different payment schedule in order to give effect to the jury's finding as to the present value of the future economic damages.*" (*Salgado, supra,* 19 Cal.4th at p. 650, italics added.) It is the italicized portion of the foregoing quote over which the parties disagree, i.e., they disagree over the manner in which the court "gives effect" to the jury's present value finding in establishing a periodic payment schedule.

■ The present value of a gross award of future damages is that sum of money prudently invested at the time of judgment which will return, over the period the future damages are incurred, the gross amount of the award. (See, e.g., *Salgado, supra,* 19 Cal.4th at pp. 635, 640; BAJI No. 14.70 (8th ed. 1994 bound vol.); *DuBois* v. *DuBois* (Minn. 1983) 335 N.W.2d 503, 506; *Johnson* v. *United States* (D.Mont. 1981) 510 F.Supp. 1039, 1045.) "The concept of present value recognizes that money received after a given period is worth less than the same amount received today. This is the case in part because money received today can be used to generate additional value in the interim." (*General Motors Acceptance Corp.* v. *Jones* (3d Cir. 1993) 999 F.2d 63, 66.) The present value of an award of future damages will vary depending on the gross amount of the award, and the timing and amount of the individual payments.

■ In a MICRA case the present value of an award of future economic damages is used in limited circumstances, such as (1) when the defendant wants to pay the judgment in a lump sum and obtain a satisfaction of judgment (*Salgado, supra,* 19 Cal.4th at pp. 643-644); (2) in calculating attorney fees under Business and Professions Code section 6146 (*Salgado, supra,* at p. 647, fn. 6); (3) in determining whether prejudgment interest or other penalties are owed under Code of Civil Procedure section 998 and Civil Code section 3291; and (4) in setting off a codefendant's settlement

(*Salgado, supra,* at p. 647, fn. 6; *Hrimnak, supra,* 38 Cal.App.4th at p. 979). However, the present value cannot be used as the figure to be periodized; periodic payments are based on the *gross* amount of the future damages. (*Salgado, supra,* at p. 639; *Hrimnak, supra,* at p. 974.) Consequently, reading the questioned statement from *Salgado* in the context of the entire decision, we conclude that when the Supreme Court remanded with the comment that the trial court retained discretion to order a different payment schedule in order to "give effect" to the jury's present value finding, it was referring to the trial court's ability to alter the duration and amount of the payments, in light of the jury's apparent finding that the plaintiff "would suffer greater economic losses relatively early in life, thereby increasing the present value of the total losses." (*Salgado, supra,* at p. 649.)

Appellant wants to fund the periodic payments with an annuity. Its view is that under *Salgado* the trial court has discretion to incorporate the jury's present value finding into a payment schedule, but it does not suggest how that might be accomplished. Rather, it contends the trial court abused its discretion in this case because its payment schedule lacks substantial evidentiary support. Respondent simply argues that the trial court did not abuse its discretion, and that "[t]o allow the substitution of an annuity of obvious lesser value would deprive plaintiff of the jury's determination of present cash value and would give discretion to defendant to unilaterally nullify the jury's determination."

In their concern over the use of an annuity, the parties tend to confuse two separate concepts: (1) the manner in which the defendant complies with a judgment for periodic payments, and (2) the present value of the gross award. ▮ As a general rule, the manner in which the defendant complies with a judgment ordering periodic payments of economic damages in a MICRA case is the defendant's decision, regardless of any finding of present value. For example, the defendant can fund the judgment itself simply by writing a check to the plaintiff each payment period, or it can purchase an annuity to fund the stream of payments ordered by the court. Of course, both these alternatives leave the defendant liable for the balance of the judgment until it is fully satisfied. (*Salgado, supra,* 19 Cal.4th at pp. 643-644.)[4] Assuming the plaintiff has not exercised his or her statutory right to periodic payments, the defendant can also pay the present cash value of the gross award in a lump sum and obtain a satisfaction of judgment. (*Ibid.; Hrimnak, supra,* 38 Cal.App.4th at pp. 981-982.)

---

[4]Section 667.7, subdivision (a), provides in part: "As a condition to authorizing periodic payments of future damages, the court shall require the judgment debtor who is not adequately insured to post security adequate to assure full payment of such damages awarded by the judgment."

The present value of the future damages is not subject to dispute in this case. It was submitted to the jury, appellant has not challenged the jury's finding on appeal as we noted earlier, and *Salgado* requires that the jury's finding of present value be applied when a present value figure is required. Both parties engage in a form of reverse engineering in an attempt to determine the factors the jury used to plug into the formula for its present value calculation, and thereby establish a periodic payment schedule. Those attempts fail in this case. The jury received conflicting evidence concerning the calculation of present value. The parties presented alternative scenarios depending on such variables as respondent's living arrangements, the duration of her working life and her potential salary. Their calculations for future damages included graduated payments based on various inflationary factors. The jury also received the present value table from BAJI, which is based on a constant annual payout. Appellant submitted evidence of a present value of $282,744 for future medical costs and zero for lost income. Respondent offered evidence of a present value as high as $2,287,300 for future medical costs and $1,184,254 for lost income. ▮ The present value of an award of future economic damages can be determined only after the frequency, duration and amount of the individual periodic payments has been established, and the jury does not determine the payment schedule. Under the circumstances here, it would be speculative to attempt to determine how the jury arrived at its present value figure, other than to say that it rejected both parties' figures.

▮ Section 667.7 requires the jury to designate that portion of its verdict allocated to future damages (*American Bank, supra*, 36 Cal.3d at p. 376), but entrusts the establishment of the schedule, i.e., the duration, frequency and amount of the periodic payments, to the discretion of the court. The court then structures a periodic payment schedule, using the gross amount of future damages as "*the* pivotal figure" in its determination. (*Hrimnak, supra*, 38 Cal.App.4th at p. 979, italics in original; accord *Salgado, supra*, 19 Cal.4th at p. 639.) Consequently, whatever plan the court fashions for periodic payment of the judgment, it must provide for a total payout of accrued and future damages to the plaintiff in an amount which equals the gross award, less statutory attorney fees (Bus. & Prof. Code, § 6146), nonrecoverable costs, and any valid liens against the judgment. (See *Salgado, supra*, at p. 651.) "The plaintiff is entitled to no less, and to no more." (*Id.* at p. 643, fn. omitted.)

Therefore, appellant is not foreclosed from purchasing an annuity to fund the periodic payments for which it is liable, but it cannot obtain an immediate satisfaction of judgment by doing so. (*Salgado, supra*, 19 Cal.4th at pp. 643-644.) Appellant can obtain an immediate satisfaction of judgment only

by paying the present cash value as found by the jury, assuming respondent has not exercised her right under section 667.7 to periodic payments.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## IV

Appellant contends the trial court abused its discretion in setting the duration of the payments. The legislative intent behind periodic payments of medical malpractice judgments is to enable courts "to provide compensation sufficient to meet the needs of an injured plaintiff and those persons who are dependent on the plaintiff for whatever period is necessary while eliminating the potential windfall from a lump-sum recovery which was intended to provide for the care of an injured plaintiff over an extended period who then dies shortly after the judgment is paid, leaving the balance of the judgment award to persons and purposes for which it was not intended." (§ 667.7, subd. (f).) ■ The fundamental goal of the statute is "matching losses with compensation by helping to ensure that money paid to an injured plaintiff will in fact be available when the plaintiff incurs the anticipated expenses or losses in the future" (*American Bank, supra*, 36 Cal.3d at p. 369; accord, *Salgado, supra*, 19 Cal.4th at p. 639; *Hrimnak, supra*, 38 Cal.App.4th at p. 975), i.e., "affording a fair correlation between the sustaining of losses and the payment of damages" (*American Bank, supra,* at p. 376; *Hrimnak, supra,* at p. 975).

To satisfy this objective, the court will necessarily be guided by the evidence of the plaintiff's future damages. (*Salgado, supra*, 19 Cal.4th at p. 639; *American Bank, supra*, 36 Cal.3d at p. 377.) A precise match between future losses and compensation is not required, but there must be evidence to uphold the court's payment schedule. (*Hrimnak, supra,* 38 Cal.App.4th at p. 976.)

### A. *Medical Payments*

Respondent was 21½ years of age at the time of trial. The parties agree that at that time she had a remaining life expectancy of 59 years, i.e., to age 80, and that she will require medical and supportive care for the remainder of her life. For example, she cannot live independently, cannot drive a motor vehicle or even operate a washer/dryer, cannot follow meal preparation instructions, is subject to disorientation, and lacks memory and judgment,

*See footnote 1, *ante*, page 871.

and this condition will never improve. However, the court ordered future medical payments, starting at age 23, for only 42 years, i.e., to age 65. Periodic payments are not necessarily dependent on life expectancy when there is evidence supporting a lesser duration. For example, in *Atkins* v. *Strayhorn* (1990) 223 Cal.App.3d 1380 [273 Cal.Rptr. 231] (*Atkins*) the jury found the plaintiff had a life expectancy of six years, but the trial court did not abuse its discretion in ordering periodic payments over four years, given the evidence that the plaintiff would incur his particular medical care and equipment expenses in less than six years. (*Id.* at pp. 1386, 1396.) Here, however, the experts for both parties agreed that except for certain immediate rehabilitation expenses, respondent's medical needs would be constant and uniform throughout her life, and there is no evidence indicating why these expenses would be unnecessary for the last 15 years of her anticipated life expectancy. Respondent is unable to manage her own finances so as to be able to invest "front-loaded" payments (i.e., payments that have greater spending value in the early years, before the impact of inflation) in order to ensure the availability of medical costs in later years. Under these circumstances we agree with appellant that the payment schedule must be restructured to provide medical and supportive care for respondent throughout her life.

## B. *Lost Earnings*

■ The 20-year duration for lost earnings also lacks evidentiary support. Respondent had a high school diploma and there was evidence that she would have obtained a bachelor's degree absent her injuries, from which it is reasonable to infer a working life beginning at age 23, when the court ordered the lost earnings payments to commence. The jury was not asked to find the length of respondent's working life, and there is no evidence from either party that it would have been limited to 20 years. Respondent's expert premised his analysis of her lost earnings on her working to age 65, conceding that although women may lose some work time for "motherhood," the current data show that women today take less time off for childbirth and childcare than they did a decade ago. Appellant's expert based his lost earnings analysis on a federal government "work life table" that took into account a woman's absence from work during child-rearing years, and showed a working life expectancy that ranged from 26.7 years with a high school diploma, to 28 years with a nontechnical bachelor's degree. There is nothing in this record to explain why respondent's working life would be less than the minimum supported by the evidence. Although the trial court has considerable discretion in structuring a periodic payment schedule, that discretion must be exercised within evidentiary parameters. (*Hrimnak, supra,* 38 Cal.App.4th at p. 976.)

## C. *Equal Installments*

■ According to both parties' evidence, except for the expense of immediate rehabilitation and training, which the trial court ordered paid immediately, respondent's medical and supportive needs will remain constant throughout her life, but the cost thereof will increase at least consistently with inflation. In addition, were it not for her disability her income would also rise during the course of her working life. Appellant's expert opined that medical goods and services will increase by a 4 percent annual inflation rate, and respondent's expert anticipated an even greater increase. The issue on review is whether the trial court abused its discretion under these circumstances by ordering equal payments, which have greater spending power during respondent's earlier years than later in life.

The same issue was raised in *Salgado*, where the Supreme Court held there was no abuse of discretion, noting that the evidence in that case indicated that the plaintiff's losses would be greater in his earlier years. The record here is just the opposite. It is expected that respondent will continue to reside with her parents, who will assume caretaking duties as long as possible, thereby minimizing respondent's expenses during her earlier years. It is later in life when her parents can no longer care for her that respondent's expenses will increase.

"[T]he fundamental goal [of section 667.7] is to match losses with compensation as the losses occur." (*Salgado, supra*, 19 Cal.4th at p. 640.) The undisputed evidence here is that without progressive payments respondent will not have sufficient funds available to her in the future to meet the increased cost of her medical needs. The purpose of the periodic payment statute—assurance that injured plaintiffs will have sufficient funds available to meet their future needs—will be thwarted unless inflation and salary increases are factored into the payment schedules.

### V

■ Business and Professions Code section 6146, which governs contingency fees for attorneys in MICRA actions, provides that when a plaintiff is awarded periodic payments under section 667.7, "the court shall place a total value on these payments based upon the projected life expectancy of the plaintiff and include this amount in computing the total award from which attorney's fees are calculated under this section." The "total value" is not the arithmetic sum of all future payments required by the award; it is the present value of the periodic payments. (*Atkins, supra,* 223 Cal.App.3d at p. 1399.) Here, the trial court used the jury's present value findings to calculate

respondent's attorney fees. Appellant originally challenged this calculation, contending the fees should be based on the cost of an annuity to fund future damages. It is unclear from supplemental briefing filed after the Supreme Court's modification of *Salgado* whether appellant continues to maintain this contention. The Supreme Court specifically declined in *Salgado* to determine whether the cost of an annuity to fund the judgment could be used as the basis for calculation of attorney fees. (*Salgado, supra*, 19 Cal.4th at p. 647, fn. 6.) However, *Salgado* clearly holds that a jury's finding of present value of future damages is binding on the trial court. (*Id.* at p. 649.) Consequently, we conclude that when the jury has made a specific finding of the present value of future damages, the trial court does not abuse its discretion by calculating attorney fees on that amount.[6]

## VI-VIII*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed and remanded with directions to restructure the payment of the judgment in accordance with this opinion, unless appellant elects to pay the present value in a lump sum and obtain a satisfaction of judgment. The parties to bear their own costs on appeal.

Jones, P. J., and Stevens, J., concurred.

---

[6]The author of *Hrimnak, supra*, 38 Cal.App.4th at page 983, filed a concurring opinion wherein he noted the conflict between the health care provider and its insurer concerning the satisfaction of judgments in MICRA cases. A similar conflict exists between attorney and client over the manner in which attorney fees are to be calculated and paid. (See, e.g., *Waters v. Bourhis* (1985) 40 Cal.3d 424, 438 [220 Cal.Rptr. 666, 709 P.2d 469]; *Roa v. Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 925, fn. 4 [211 Cal.Rptr. 77, 695 P.2d 164]; *Nguyen v. Los Angeles County Harbor/ULCA Medical Center* (1995) 40 Cal.App.4th 1433, 1450 [48 Cal.Rptr.2d 301].) We have to rely on the trial courts to ensure fairness to both attorney and client in this process.

*See footnote 1, *ante*, page 871.